CORDELIA HASTINGS & others *vs.* RUFUS S. HASTINGS.

In 1853 A., the owner of a farm, conveyed by deed "the farm on which I now live, and is the same which was deeded to me by J. S., March 15, 1810, reference being had to said deed." A lot of land which had formed part of the farm for forty years was not included in the deed of March 15, 1810, but had been conveyed to A. by J. S. by a deed dated January 11, 1810. *Held,* that this lot passed by the deed of A.

A. conveyed an undivided half of his farm to B., taking back from him a mortgage on the granted premises, to secure performance of a bond, and conveyed the other undivided half of the farm to C., taking back a like mortgage and bond. C. then conveyed to B., by a quitclaim deed, all his interest in the farm, except a lot, known as the H. lot, and B. gave him an agreement under seal to hold him harmless from any liability under his bond. This agreement was not recorded, but the deeds, mortgages and bonds were. Afterwards A. foreclosed the mortgage given by B., and subsequently gave B. a quitclaim deed of the whole farm. *Held,* that the H. lot was discharged from the mortgage given by C., and that no right to enter for breach of the condition of the bond passed to one to whom B. conveyed the farm.

In an action for breaking and entering the plaintiff's close, the defendant may show that he is tenant in common with the plaintiff, under an answer denying all the allegations of the declaration, although not setting up title in himself.

Under the Gen. Sts. *c.* 138, § 10, one tenant in common cannot maintain an action against another for cutting and carrying away wood.

TORT by Cordelia Hastings, Ruthven Hastings, Arthur Hastings and Leslie Hastings. The first count of the declaration was on the Gen. Sts. *c.* 138, § 10,* for wilfully and without license

---

* "If any person without license wilfully cuts down, carries away, girdles, or otherwise destroys, any trees, timber, wood or underwood, on the land of another, the owner may recover, in an action of tort, three times the amount of the damages that shall be assessed therefor, unless it appears that the defendant had good reason to believe that the land on which the trespass was

cutting down, carrying away and destroying trees, timber and wood on land of the plaintiffs. The second count was trespass for the same acts. Writ dated September 6, 1869. The answer denied all the allegations of the declaration. Trial in this court, before *Chapman*, C. J., who, before verdict, made a report of the case for the determination of the full court, substantially as follows :

On September 21, 1853, William Babcock was the owner of a farm in Berlin and Bolton, on which he then lived. Included in this farm were two adjacent lots of land known as the Hoar lot and the Carter lot. The Hoar lot had been conveyed to him by Jonathan Merriam by deed dated January 11, 1810 ; the rest of the farm had been conveyed to him by Merriam by deed dated March 15, 1810 ; and for more than forty years the Hoar lot had formed part of the farm.

On September 21, 1853, William Babcock, by warranty deed, conveyed to his son, Jonathan Babcock, land described as follows : " One undivided half of the farm on which I now live, situated in the northerly part of Berlin aforesaid, and in the southwesterly part of Bolton, and is the same which was deeded to me by Jonathan Merriam, March 15, 1810, reference being had to said deed, which is recorded in the registry of deeds at Worcester, Book 212, Page 285 ; " and at the same time he took from Jonathan a bond, conditioned to deliver to him annually during his natural life one half of the produce of the land conveyed, and a mortgage on the undivided half to secure the bond.

On October 20, 1853, William Babcock, by warranty deed, conveyed to his son William Thomas Babcock land described as follows : " One undivided half of the farm on which I now live, situated in the northerly part of Berlin aforesaid, and in the southwesterly part of Bolton, meaning to convey all that remains of said farm, after the conveyance which was made to Jonathan Babcock on September 21, 1853 ; for other particulars reference being had to said Jonathan's deed ; " and at the same time he

committed was his own, or that he was otherwise lawfully authorized to do the acts complained of, in which case he shall be liable only for single damages."

took from William Thomas a bond, conditioned to deliver to him annually during his natural life one half of the produce, and a mortgage on the undivided half to secure the bond.

On March 31, 1855, William Thomas Babcock, in consideration of $900, gave to Jonathan Babcock a quitclaim deed of all his interest in the farm, except the Hoar lot, making no reference to his mortgage, and with special covenants of warranty against all persons claiming under him.

All of these aforesaid deeds, mortgages and bonds were duly recorded at or about their dates.

At the time of the last conveyance, Jonathan Babcock executed to William Thomas Babcock an instrument under seal, by which he agreed to do and perform all that William Thomas was legally bound by his said bond to do and perform, and to exonerate and save him harmless, but which contained no reference to any mortgage. This agreement was not recorded till March 11, 1871.

On June 4, 1855, William Babcock brought a writ of entry against Jonathan Babcock, to foreclose the mortgage given by the latter, wherein he demanded possession of the whole farm except the Hoar lot and Carter lot, and he recovered judgment, and obtained possession of the demanded premises. On May 1, 1856, he gave to Jonathan Babcock a quitclaim deed of his interest in the whole farm, including the Hoar lot, with special covenant of warranty against all persons claiming under him, and at the same time took back a mortgage of the whole farm, with full covenants of warranty, seisin, &c., conditioned to secure the payment of $637.51 in eight annual payments, with interest.

On September 30, 1856, Jonathan Babcock conveyed his interest in the whole farm, including the Hoar lot, to Christopher S. Hastings, who on August 20, 1862, paid off the mortgage for $637.51, which was then discharged of record, and in September 1863, died intestate, leaving the plaintiff Cordelia Hastings, his widow, and the other plaintiffs, his children and sole heirs at law. Since his death, the plaintiffs have occupied the farm in common, under the Gen. Sts. c. 90, § 7, mending the fences, surveying it and paying the taxes, to the present time.

William Babcock died September 14, 1861.

Hastings *v.* Hastings.

On April 23, 1862, William Thomas Babcock gave to the defendant a warranty deed of the Hoar lot, delivered on the land, and the defendant, between January 30, 1865, and February 11, 1865, cut timber on the Hoar lot, and also on the Carter lot, which he supposed to be a part of the former. This was the tort complained of.

On February 20, 1865, Cordelia Hastings, as administratrix of the estate of Christopher S. Hastings, made an entry upon and took possession of the premises mortgaged by William Thomas Babcock to William Babcock, for breach of condition and to foreclose the right of redemption; and a certificate thereof was duly made and recorded.

The judge reported the questions of law arising on these facts; the case to be disposed of on such terms as might be fixed by the court, as law and justice should require.

*E. M. Bigelow*, for the plaintiffs.

*P. E. Aldrich*, for the defendant.

CHAPMAN, C. J. The deed of William Babcock to his son Jonathan, of September 21, 1853, described " one undivided half of the farm on which I now live, situated in the northerly part of Berlin aforesaid, and in the southwesterly part of Bolton, and is the same which was deeded to me by Jonathan Merriam, March 15, 1810, reference being had to said deed, which is recorded," &c. The deed of Jonathan Merriam referred to did not include the land in controversy, but that land had been conveyed by Merriam to Babcock by deed dated January 11, 1810. At the date of the deed of William to Jonathan Babcock, both lots were included in the farm on which William lived, and his deeds from Merriam had been made long before, and nearly at the same time, and both lots had continued to be a part of his farm. His deed to Jonathan is to be construed most strongly against himself, and we think the words " the farm on which I now live " must be governed by the rule laid down in *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15, and are not to be restrained by the reference to Merriam's second deed. He took back a bond with condition that Jonathan should deliver to him annually during his natural life one half of the produce of the land conveyed, and a mortgage to secure the bond.

On October 20, 1853, William gave to his other son, William Thomas, a deed of land described as follows : " One undivided half of the farm on which I now live, situated in the northerly part of Berlin aforesaid, and in the southwesterly part of Bolton, meaning to convey all that remains of said farm after the conveyance which was made to Jonathan Babcock on September 21, 1853 ; for other particulars reference being had to said Jonathan's deed." At the same time he took from William Thomas a bond conditioned to deliver to him annually during his natural life one half of the produce, and a mortgage to secure the bond.

The two sons thus became tenants in common of the farm, subject to the mortgages given to their father. . On March 31, 1855, William Thomas, in consideration of $900, quitclaimed to Jonathan all his interest in the farm except the Hoar lot, making no reference to his mortgage, and with special covenants of warranty against all persons claiming under him ; and Jonathan gave him an instrument under seal, agreeing to do and perform all that William Thomas was bound by his bond to do and perform, and to exonerate and save him harmless, but making no reference to the mortgage ; and the agreement was not recorded. Jonathan became entitled thereby to the whole farm except half of the Hoar lot, subject to the two mortgages. By a writ of entry brought soon afterwards, namely, on June 4, 1855, William, the father, foreclosed Jonathan's mortgage, obtaining possession of the farm except the Hoar lot and Carter lot. But on May 1, 1856, he quitclaimed to Jonathan his interest in the whole farm, including the Hoar lot, with special covenants of warranty against all persons claiming under him ; and at the same time took back a mortgage of the whole farm, with full covenants of warranty, seisin, &c., conditioned to secure the payment of $637.51 in eight annual payments, with interest. This transaction left the father no interest in the farm, except the last mentioned mortgage from Jonathan, which was paid and discharged August 20, 1862. As between William Thomas and Jonathan, the latter being bound to save the former harmless from his bond and mortgage, neither he nor his representatives could enforce the mortgage against William Thomas. It needed no conveyance to discharge his

mortgage. When Jonathan conveyed to Christopher S. Hastings August 12, 1858, his deed passed no title to the undivided half of the Hoar lot which William Thomas had reserved. When Cordelia Hastings entered upon the premises for breach of the condition of the mortgage of William Thomas, nothing passed to her thereby, for the mortgage had been extinguished; nor had the interest of William Thomas in the Hoar lot ever been reduced to an equity of redemption. As to those who had a right to claim performance of the condition from him, he had performed it.

The parties to this action are now tenants in common of the Hoar lot. One count in the plaintiffs' declaration is for wilfully and without license cutting down, carrying away and destroying trees, timber and wood on land of the plaintiffs. The second count is for tort in the nature of trespass *quare clausum fregit* for the same acts. But the general doctrine is, that one tenant in common cannot maintain trespass against his co-tenant for an entry upon and enjoyment of the common property. 4 Kent Com. (6th ed.) 370. It is said that the answer sets up no allegation of title in the defendant, though it denies all the allegations of the plaintiff's writ. But this denial is sufficient to put the plaintiff upon proof of his exclusive right to possession of the whole land. *Rawson* v. *Morse*, 4 Pick. 127. Nor can the count for wilful tres pass be maintained against a co-tenant, under the Gen. Sts. *c.* 138, § 10. This section was not designed to extend the remedy to cases where an action of trespass would not lie by the common law, and the action is not brought upon the seventh section of the statute.

The easterly part of the *lorus* is called the Carter lot; and some part of the wood was cut upon it. The defendant had no title to this part, and is at least liable in trespass for what he did upon it. Whether he is liable upon the tenth section of the statute must depend upon the evidence. The case must stand for trial upon these principles. *Ordered accordingly.*