CHARLES S. LOUD *vs.* CLEMENT F. BARNES & another.

Plymouth.    February 27, 1891. — September 3, 1891.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Mutual Mistake — Reformation of Deed — Appeal — Findings of*
*Single Justice.*

Upon a bill in equity to reform a deed, so that its northerly line should exclude a building, and its easterly line, which was described as running " west about ten rods " to land of certain heirs, should read " west two rods," it appeared on appeal from a decree of a single justice dismissing the bill, upon a report of the whole evidence, that the oral testimony as to the northerly line was conflicting, and that the only evidence as to the easterly line was the scrivener's testimony that, in copying the description from an earlier deed, he read the word " two " as " ten."   In the printed copy of this deed annexed to the report the word was printed " ten," and upon inspection of the deed it was impossible to determine whether the word was intended for ten or two.   There was no dispute as to where the land of such heirs was.  *Held*, that the decree should not be reversed.

BILL IN EQUITY, filed in the Superior Court, for the reformation of a deed.   Hearing before *Bishop*, J., who dismissed the bill ; and the plaintiff appealed to this court.

*H. H. Pratt*, for the plaintiff.

*J. M. Day & T. C. Day*, for the defendants.

LATHROP, J.   This is a bill in equity to reform a deed.   The case was heard by a single justice of the Superior Court, who entered a decree dismissing the bill, and the case comes before us on an appeal by the plaintiff, the evidence being reported in full.

On January 19, 1888, the plaintiff conveyed by a warranty deed to the first named defendant and his wife " a certain lot of land, with the buildings thereon, lying on the south side of Centre Avenue in said Abington, containing twenty-five square rods, more or less, bounded and described as follows, viz. : beginning on said street at the northeast corner of land of the heirs of the late Jesse E. Keith, and running thence easterly with said street about eight rods, thence south twenty-five degrees west about ten rods and twenty-four links, to land of the heirs of Asaph Dunbar; thence by said Dunbar land north sixty-eight degrees west about eight rods, to land of Joseph G. and Sophia N. Lowe ;

thence north twenty-five degrees east, by land of said Lowe's and said Keith's heirs, to the first corner." The deed further describes the land as being the same premises conveyed to the grantor by Mary L. Richmond, by deed dated August 5, 1873.

After the conveyance by Richmond, and before the deed by the plaintiff to the defendants, one Giles, claiming to own the land, put up a building, used as a market, on Centre Avenue, and on the land covered by the deed.

The plaintiff seeks to have the deed reformed by having the northerly boundary line described as running, from the point of beginning, " easterly with said street and land of Thomas F. Giles and others, about eight rods," and by having the easterly line described as running "south twenty-five degrees west two rods and twenty-four links, to land of the heirs of Asaph Dunbar."

It is clear that the bill cannot be maintained unless there was a mistake common to all the parties to the deed. *Page* v. *Higgins*, 150 Mass. 27. The description of the northerly line in the deed corresponds exactly with the description of the same line in the deed from Richmond to the plaintiff. The only ground for contending that there was a common mistake is, that the plaintiff's evidence tends to show that the bounds of the land were pointed out by the plaintiff to the first named defendant, and that these bounds would bring the northerly line in the rear of the building used for a market. While the defendants admit that certain bounds were pointed out, their testimony tends to show that such bounds would include the building used as a market, and that the northerly boundary line was on Centre Avenue.

The witnesses in this case testified orally in the Superior Court. In cases of this sort, the decree appealed from will not be reversed on a question of fact, unless it clearly appears to the appellate court to be erroneous. The justice who heard the case saw the witnesses, and could judge better than we can of the degree of credibility to be given to their testimony. *Chase* v. *Hubbard*, 153 Mass. 91, and cases cited.

After an examination of the testimony, we are unable to say that the justice who heard the case erred in refusing to allow the deed to be reformed in this respect.

In regard to the easterly line, which is described as running "about ten rods and twenty-four links, to land of the heirs of Asaph Dunbar," and which the plaintiff contends should be "about two rods and twenty-four links," it appears that the length of this line, according to the plaintiff's contention, should be forty-nine feet, and, according to the defendants' contention, about seventy-two feet. While it is obvious that the word "ten" does not accurately describe the length of the easterly line, we find no evidence in the report bearing directly upon the question whether the word "two" should be substituted for "ten," except the testimony of the scrivener who drew the deed, who testifies that he copied the description in the Richmond deed, and that he read the word "two" as "ten." In the printed copy of the Richmond deed annexed to the report this word is printed "ten." By consent of counsel, the original Richmond deed has been furnished us, and, on inspection, it is impossible to determine whether the word is intended for ten or two.

The length of the easterly line is not a matter of importance, except as it bears upon the first question discussed. The line runs, in a certain direction, from the northeast corner of the land conveyed to the land of the heirs of Dunbar. There is no dispute as to where this land is, and, as a monument, it controls any distance stated in the deed.

On all the evidence in the case, we are of opinion that the decree must be,                                    *Affirmed.*