# Kahn v. Peter, Admr.

*Bill in Equity to set aside a Conveyance as Fraudulent.*

104  523
f128 879

1. *Fraudulent conveyance; one who advised the execution, and receives and retains the benefit thereof is estopped from attacking it* —Complainant and W. were liable on a forfeited bond, and, to put his property beyond the reach of a judgment they knew would soon be rendered on said bond, W , with complainant's consent and advice, conveyed all of his property to his brother in payment of an alleged indebtedness, and upon the further consideration that the grantee would pay sundry debts of W. to third persons, including one due complainant. Said grantee cancelled the alleged indebtedness of W. to himself, and discharged the other part of the consideration by the payment of each of the debts he assumed to pay, including that of complainant. Subsequently, the complainant acquired certain money demands against W. and settled the judgment rendered on said bond, and now seeks by bill in equity to have the conveyance by W. of his property, in so far as it was a benefit to the grantee, set aside as fraudulent and void as against the said money demands and the rights of the judgment creditor, to which he, complainant, has succeeded by subrogation. *Held,* that, having advised and participated in the execution of the conveyance, complainant is estopped from questioning its validity, and having accepted and retained the benefit secured to him therein, he is likewise estopped from attacking the conveyance as fraudulent and void.

2. *Same; when one estopped though he was ignorant of the fraud at the time of advising conveyance.*—In such a case, the fact that the complainant, when he advised the conveyance and accepted payment thereunder from the grantee, did not know that the grantee's debt was simulated, can furnish no ground for attacking said conveyance; since he will not be permitted to set aside a sale which he brought about by his own fault in giving advice ignorantly.

3. *Same; the fact that judgment creditor was not estopped furnishes no ground for relief.*—In such a case, the fact that the judgment creditor, to whose rights complainant succeeded by subrogation, was not estopped to attack such conveyance for fraud, does not prevent complainant from being estopped in respect of that part of his demand which results from his compromise and settlement of the judgment, to the extent of the grantor's contributive share of the sum paid by

complainant; the said conveyance having been made, upon complainant's consent and advice, for the express purpose of defeating this very claim of the judgment creditor, complainant can not afterwards be allowed to thwart, for his own benefit, the sole purpose and object of said conveyance.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOE.

The bill in this case was filed by the appellant against the appellee on January 3, 1891, and prayed to have a certain conveyance, executed by one George F. Werborn to his brother, Charles Werborn, set aside and annulled as fraudulent against the grantor's existing creditors, and to have a receiver appointed to take charge of the property conveyed in said deed.

The plaintiff filed the bill as a creditor of said George F. Werborn, as shown by the following facts which are gathered from the averments of the bill : On November 5, 1878, Adolph Proskauer, as principal, with Bernard Kahn and Charles Werborn as sureties, executed and delivered to the probate judge of Madison county, Alabama, a bond in the penal sum of $22,000, payable to said judge, conditioned to be void if said Proskauer should well and truly perform all the duties which the law required of him as the guardian of Emma Matilda Heinman, a minor, or else to remain of full force and effect. This bond was approved by said judge on November 20, 1878, and letters of guardianship were thereupon issued to said Proskauer, and he took possession of the property of said ward and entered upon the discharge of his duties as guardian. On December 27, 1886, the said Proskauer ceased to be the guardian of said minor, and was succeeded in such office by John H. Sheffey, and upon final settlement on that day of Proskauer's guardianship in the probate court, there was a decree rendered against the said Proskauer, in favor of the newly appointed guardian, for the sum of $16,066.79. Execution issued upon this decree, and was returned "no property found." Thereupon executions were issued against the sureties on the bond of guardianship of said Proskauer, and placed in the hands of the sheriff of Mobile county where they both resided, and were returned "no property found." All of these proceedings were had prior to May 22, 1889, and before the last named date the said Sheffey had

ceased to be the guardian of said minor, whose person and estate had been removed to Phillips county, Arkansas, and one Lycurgus Lucy had been duly appointed guardian of said minor by the probate court of said Phillips county. On May 22, 1889, the complainant compromised the decree rendered against Proskauer and his sureties, in favor the minor, for $4,900, which sum he paid to said Lucy, as guardian, and received from him a full discharge of said Proskauer, and of himself and George F. Werborn, as sureties on said guardianship bond. This settlement was made under the authority conferred upon Lucy by the probate court of Phillips county, Arkansas, and said court thereafter fully confirmed said settlement.

In effecting this compromise, as alleged in the bill of complaint, the complainant was compelled to employ legal counsel, and he paid to such counsel, as reasonable fees, the sum of $607.75. It was also alleged in said bill that the complainant compromised another claim in favor of the minor's estate against the said Proskauer of $1,356.33, which had been reduced to judgment, by the payment of $1,056.33.

The complainant further averred in his bill that the said George F. Werborn was equally benefitted with himself by the payment of the said sum of $4,900 to said Lucy, and of $607.75 to the attorney effecting such compromise, and of $1,056.66, paid by him in compromise of the other claim against said Proskauer; and that by the payment of these several claims the said George F. Werborn became and was justly indebted to the complainant in one-half of the amount of each of said payments; that no part of said indebtedness had ever been paid to him by said Werborn, and that the whole now remains unpaid and justly due to him from the estate of George F. Werborn. It was then averred in the bill that the said George F. Werborn, who was then engaged in business in the city of Mobile, owned a valuable stock of merchandise, amounting to not less than $25,000, and who had large collectible debts outstanding, did on October 26, 1886, execute a bill of sale to his brother, Charles Werborn, conveying all of his property, upon the consideration of the satisfaction of an alleged indebtedness of $13,323.33, due from said George F. Werborn to Charles Werborn, and the undertaking by the latter to pay sundry other debts due from said George F. Wer-

[Kahn v. Peter, Admr.]

born to other creditors, aggregating about $13,338.20.
It was then alleged that this sale was fraudulent and
void, that the alleged debt from George F. Werborn to
Charles Werborn was simulated, and that this sale was
fraudulent as to the complainant in hindering and de-
laying him in the collection of it claims against the said
George F. Werborn.

Prior to the filing of the bill both George F. Werborn
and Charles Werborn had died, and the respondent,
Charles F. G. Peter, was appointed the administrator of
their respective estates.

The prayer of the bill was that the bill of sale, which
was attacked as fraudulent, should be set aside and an-
nulled, and so much of the property conveyed thereby as
was necessary be subjected to the payment of the
claims of the complainant. The respondent answered
the bill, and averred among other things, that the bill
of sale was made with the advice and assent of the
plaintiff; that a debt due him from George F. Werborn,
amounting to $1,000, was among the debts of said George
F. Werborn, which Charles Werborn agreed to pay as a
part of the consideration of said sale, and that the said
Charles Werborn had paid to the complainant the $1,000
due him from George F. Werborn.

The evidence of the complainant and the respondents
was in direct conflict as to the facts averred in the
answer of the respondent. The facts in reference thereto
are sufficiently stated in the opinion.

On the final submission of the cause, upon pleadings
and proof, the chancellor decreed that the complainant
was not entitled to the relief prayed, and dismissed his
bill. The present appeal is prosecuted by the complain-
ant, who assigns as error said final decree of chancellor.

CLARKES & WEBB and PILLANS, TORREY & HANAW,
for appellant.—1. The grantor in the deed of convey-
ance, George F. Werborn, was indebted to the complain-
ant for his aliquot portion of the amount for which the
complainant satisfied their joint obligation on the
guardianship bond.—Brandt on Suretyship & Guaranty,
§ 254; Owen v. McGehee, 61 Ala. 440; Bragg v. Patterson,
85 Ala. 233; Pegram v. Riley, 88 Ala. 399.

2. The claim of the guardian to which the complain-
ant succeeded by subrogation, was an existing liability

against George F. Werborn at the time of the convey-
ance to him by his brother, and, therefore, the burden
of proof was upon the respondent to show valuable and
adequate consideration passing from said grantee to the
grantor.—*Zelnicker v. Brigham,* 74 Ala. 598 ; *Buchanan v.
Buchanan,* 72 Ala. 55 ; *Caldwell v. Pollak,* 91 Ala. 353 ;
*Owens v. Hobbie & Teague,* 82 Ala. 466; *Lehman v. Meyer,*
67 Ala. 396; *Adams v. Thornton,* 78 Ala. 489.

3. When a creditor acquires a preference or advantage
by purchasing property from his debtor in payment of a
debt, which operates to hinder and delay other creditors,
and, perhaps, to defeat the collection of their demands,
and the transaction is assailed, he will be required to
establish, by clean and satisfactory proof, the existence
and validity and the *bona fides* of his debt; and if a con-
nection by blood or marriage is shown, clearer and more
convincing proof will be demanded.—*Owens v. Hobbie &
Teague,* 82 Ala. 466; *Searcy v. Pollak,* 84 Ala. 259; *Har-
rell v. Mitchell,* 61 Ala. 270 ; *Reeves v. Skipper,* 94 Ala.
407.

4. The surety who pays a debt of a party, is sub-
rogated to the rights of the creditor against his co-
surety.—Brandt on Suretyship & Guaranty, (2d Ed.) , §
309; *Knighton v. Curry,* 62 Ala. 404 ; *Watts v. Eufaula
Nat. Bank,* 76 Ala. 474 ; *Turner v. Teague,* 73 Ala. 557.

5. The complainant in the present bill not being
shown to have known of the fraudulent character of the
alleged consideration, for the conveyance from George
to Charles Werborn is not estopped from attacking said
conveyance for fraud. The answer does not pretend
that complainant knew that George F. and Charles Wer-
born were concocting a fraud and agreeing to set up a sim-
ulated consideration for the deed from George to Charles;
and, therefore, if the allegation was true, no estoppel
would arise. A declaration or act or admission can and
does arise to the dignity of an estoppel only when made
with a full knowledge of the right which the plea alleges
is precluded.—*Cloud v. Whiting,* 38 Ala. 57; *Morris v.
Alston,* 92 Ala. 502; *Muse v. Dantzler,* 85 Ala. 359; *Steele
Adams,* 21 Ala. 534 ; *Walls v. Grigsby,* 42 Ala. 473 ;
*Evans v. Daughtry,* 84 Ala. 68; *Huckabee v. Albritton,* 10
Ala. 657 ; Herman on Estoppel, 324.

6. One is held to be bound by his election, in no case,
save where it appears that such election was made with

a full knowledge of his rights at the time. As stated by our court, ''One is never bound to make an election until fully informed of all the circumstances necessary to a judicious and discriminating choice, and if an election should be made in the absence of such knowledge, it will, as a general rule, not be obligatory. *  *  * *  * The courts will be extremely slow to imply an election.''—*Reeves v. Garrett*, 34 Ala. 558; *Young v. Hawkins*, 74 Ala. 370; *Key v. Jones*, 52 Ala. 238; *Adams v. Adams*, 39 Ala. 274; *Nunn v. Norris*, 58 Ala. 202; Herman on Estoppel, 469.

FRED'K G. BROMBERG, *contra.*—The appellant was well aware of the sale before it was consummated, and participated in it as a beneficiary under the bill of sale, to the extent of one thousand dollars. This alone estops. the appellant from obtaining any relief, no matter what may be the character of the sale. Appellant can not accept benefits under a bill of sale, and then attack it as fraudulent.—*Watts v. Bank*, 76 Ala. 474; *Butler v. O'Brien*, 5 Ala. 316; *Rabitte v. Orr*, 83 Ala. 186, *Espy v. Comer*, 80 Ala. 333; *Williams v. Jones*, 77 Ala. 308; *Hatchett v. Blanton*, 72 Ala. 423 ; *Leinkauff v. Forcheimer*, 87 Ala. 258.

McCLELLAN, J.—That the complainant, Bernard Kahn, who now attacks for fraud a bill of sale executed by George F. to Charles Werborn, on October 26, 1886, was fully advised of that transaction immediately after it transpired is not denied. That a part of the consideration for the sale was the assumption by Charles Werborn of an indebtedness of $1,000 from George Werborn to the complainant, that Kahn immediately came to the knowledge of this fact, looked to Charles for payment, and soon thereafter received payment in full of his debt against George from Charles Werborn, is admitted. Whether the complainant knew of this sale beforehand and consented to and advised it, there is conflict in the evidence. Mr. Bromberg, who was the attorney of George Werborn in and about the sale, and drew up the bill of sale, swears that Kahn was consulted with reference to it, and that he consented to it and advised that it be made. Kahn swears that he knew nothing about it until it had been fully consummated. It can

not be said, we think, that these witnesses are equally interested. Kahn has a direct pecuniary interest of several thousand dollars in having the sale declared fraudulent. Bromberg has no pecuniary interest at all, so far as the record discloses, in sustaining the transaction. On the score of having been the attorney who advised and conducted the sale, he is naturally interested in sustaining it against impeachment *for fraud*; but it would seem that this interest would not be subserved by his evidence on this point, which does not tend to prove the *bona fides* of the sale, but only to estop Kahn to question the validity of the transaction. But apart from this consideration, there are others which constrain us to belief of the testimony of Bromberg. The purpose of this sale was to get the property of George Werborn out of the reach of a judgment, which he knew would soon be rendered against one Proskauer, as principal, and Kahn and Werborn, as sureties in a guardianship bond, and to devote it to the alleged personal liabilities of said Werborn. It clearly appears that Kahn at that time had no property which could be reached by execution. He had nothing to fear from the anticipated judgment except through its operation upon Werborn's property to the exclusion of the claims of Werborn's individual creditors, of whom he was one. His whole interest at that time was in line with Werborn's purpose and effort to save his property from subjection to the guardianship judgment, and to devote it to the payment of his individual debts. It is shown that both he and Werborn were alive as to the impending judgment, and that he went to Huntsville, where the settlement of the guardianship was pending, along with his and Werborn's attorney, to look after the matter, and that while they were in Huntsville, the attorney telegraphed Werborn such information in respect of the proceedings in the probate court of Madison county in the guardianship of Proskauer as caused the latter to file the bill of sale, which had been drawn before they went to Huntsville, for record in the probate office of Mobile county. On this state of case, nothing is more reasonable and probable than that Kahn should have been consulted with reference to the sale by George to Charles Werborn, or than that he should have advised that course since thereby his interests would be subserved, when, if the sale was not made, he would

lose the $1,000 which Werborn owed him. And these considerations, are, in our opinion, sufficient to turn the scales in favor of the evidence of Bromberg, and to impart probability to his statement that Kahn knew of, consented to and advised the sale beforehand, as against the naked denials of Kahn himself. And we accordingly so find, and concur with the chancellor in holding that Kahn not only accepted benefits under the bill of sale—took under its provisions—but also advised and participated in it execution.

After having thus advised the sale by George to Charles Werborn, a part of the consideration and one of the purposes of which was the payment by Charles of $1,000 to him, and after having thus accepted the benefit secured to him in that sale and received payment of $1,000 under it and as provided in the bill of sale, Bernard Kahn seeks by the present bill to have that sale, in so far as it was of benefit to Charles Werborn, the purchaser, declared fraudulent and void as against certain money demands upon George Werborn existing at the time of the sale, and to which he, the complainant, has since then succeeded by subrogation. We have no hesitancy in agreeing with the chancellor that he is estopped to do this. The sale was made to Charles Werborn in consideration, in part, of an alleged indebtedness of the seller to him and, in other part, in considerasion of his assuming and paying sundry debts of the seller to third persons, including this one of $1,000 to the complainant. As to his own claim he paid the consideration by a cancellation of the alleged indebtedness of George to him, and the other part of the consideration he discharged soon after the sale by payment of each of the seller's debts which he assumed, and among others that of complainant, amounting in the aggregate to twelve or thirteen thousand dollars. The complainant presents himself here in the attitude of affirming the validity of the sale and receiving that part of its consideration which was stipulated to be paid to him and denying the right of other creditors of George Werborn to receive that part of the consideration which was stipulated to be paid to them, and without which, it is to be presumed, the sale would not have been made, and the entire estate of George Werborn would have been consumed in the satisfaction of the Proskauer judgment; and the anomaly of

[Kahn v. Peter, Admr.]

his attitude is accentuated by the fact that he advised the sale upon these very considerations which he is now attacking as simulated and fraudulent. It is familiar law that one cannot claim both under and against a conveyance. He has an election in ordinary cases either to ratify or disaffirm a transaction of this sort; he can either claim under or against, but he cannot do both. And having adopted one course, he cannot afterwards pursue the other. And it is wholly immaterial, of course, what may be the infirmities of the transaction abstractly considered : if he elects to take under it he thereby cuts himself off from attacking it. It is good as to him though it may be bad as to everybody else. In this case the complainant did not even have an election to claim under or against the sale. Having advised the sale, he was committed to it and estopped to question its validity before the occasion upon which he would otherwise have had an election arose. He could at no time after the sale was made and he cannot now—more certainly for having taken under it—deny its entire validity.—*Rabitte & Gaudin v. Orr Brothers*, 83 Ala. 185; *Williams, Deacon & Co. v. Jones*, 77 Ala. 294; *Espy v. Comer*, 80 Ala. 333; *Hatchett v. Blanton*, 72 Ala. 423; *Leinkauff & Strauss v. Forcheimer & Co.*, 87 Ala. 258.

But it is said, this doctrine should not be applied to the complainant because, when he advised the sale to Charles Werborn and when he accepted payment of his claim from Charles Werborn according to the terms of the sale, he did not know, what he now asserts, that Charles Werborn's debt, upon consideration of which in part the sale was made, was simulated. There is nothing in this contention. In the first place, the sale was made upon his consent and advice as an interested party, and this advice and consent, which the evidence shows contributed materially to the consummation of the sale, should not have been given ignorantly. So that, whether cognizant or not of the now alleged fictitious character of Charles Werborn's claim against George, he was at fault in advising and thus bringing about the sale, and he can not now be permitted to undo what he then accomplished. His position and rights in this connection are not unlike those of the seller himself. And further, leaving the fact of his having advised the sale out of view, whether the sale as to Charles was fraudulent or not,

and whether, it being conceded to be fraudulent, he had knowledge of the fraud when he claimed and received benefits under it or not, he can not, while retaining those benefits—while holding on to the money which he received from Charles in consideration of the sale—have the transaction avoided. This would be the taking and holding under and claiming against the conveyance which all authorities denounce. And there is no pretense that he has surrendered or is willing to surrender what he received. *He is even now, with full knowledge of the alleged fraud, claiming both under and against the bill of sale.*

It is further insisted that the complainant should not be held to an estoppel in respect of that part of his demand which results from his compromise and settlement of the guardianship judgment several years after the sale, because, it is said, Lucy, the guardian, unquestionably was under no estoppel to attack the sale for fraud, and the complainant, by paying off the claim of Lucy, succeeded to the latter's footing in the premises, as against George Werborn, to the extent of said Werborn's contributive share of the sum paid by the complainant. A denial of this position may be safely rested upon the consideration that the sale was made upon complainant's consent and advice, for the express purpose of defeating this very claim of the guardian by whomsoever held or asserted; and it can not be tolerated that the complainant shall now be let in to thwart the sole purpose and object of the sale which was largely induced by him to the end he now seeks to subvert.

The decree of the chancery court must be affirmed.

