RAYMOND W. GADDES *vs.* PAWTUCKET INSTITUTION FOR
SAVINGS.

JULY 7. 1911.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Deeds.   Construction.   Estoppel.*

X. had a life estate in one half of certain property and Y. had a fee simple estate
in remainder in the whole property and an estate for the life of X. in one half
thereof.   By the merger of the estates in Y. he was seized of a present estate
in fee in one half of the property and a remainder in fee in the other half,
subject to the life estate of X. in that half.

Thereafter Y. executed a quit claim deed to X. of "all the right, title, interest,
property, claim and demand which I now have or of right ought to have or
claim in and to" the premises, the deed containing the clause "the estate
hereby conveyed is an undivided half part of the above described property,
which was conveyed to the parties hereto by deed from James Davis,"
dated, &c., recorded, &c.   X. then executed his mortgage deed of the premises
to Z. and subsequently executed another mortgage to respondent and dis-
charged the mortgage to Z.   It appeared that the deed was given in order
that X. might mortgage the entire property in fee under the prior mort-
gage to Z. and that Y. was a party to the transaction and received part
of the money, and was aware of the negotiation of the mortgage in suit
for the purpose of taking up the original mortgage.

*Held,* that, by the deed of Y. to X. the entire interest of Y. was conveyed, the
words describing it as "an undivided half part" not operating either to
limit or restrict in any way the interest granted.

*Held,* further, that the reference to the deed from the ancestor of the parties,
which deed only conveyed a life estate, was plainly for the purpose of in-
dicating the source of title and for convenience in identifying the property,
and was not made for the purpose of describing or limiting the extent of
the interest or quantity of the estate conveyed.

*Held,* further, that the conduct of Y. worked an estoppel in favor of the
respondent.

(2)   *Deeds.   Construction.   Intention.*

In the construction of a deed, the object is to give effect to the intention of the
parties.   This intention is only that expressed in the deed and not some.
secret unexpressed intention even though the latter be that actually in
mind at the time of execution.

The situation of the parties, the subject matter of the conveyance, and their
acts at and subsequent to the time of execution are important as throwing
light upon the significance of the express terms of the instrument and
enabling the court by reading the instrument so illumined to interpret it.
To this extent extrinsic evidence is admissible.

12

(3)  *Deeds.  Declarations.  Intention.*

No declarations of parties as to parol understandings or agreements before or at the time of the execution of an instrument to show their intention will be considered so as to vary its written terms.

(4)  *Deeds.  Doubtful Interpretation.*

Where the interpretation to be given an instrument remains doubtful, the court will adopt the construction which is most favorable to the grantee.

(5)  *Deeds.  References.  Restrictions.*

After having once granted an estate in a deed, the grantor cannot restrict or nullify it by a subsequent clause.  So where the description in a deed of the estate conveyed is clear and complete a reference to another deed will not operate to restrict the amount of the property or the *quantum* of the estate conveyed.

(6)  *Equity.  Appeal.  Findings of Trial Court.*

Upon appeal from a decree of a court of equity, oral testimony relied upon by the trial court should be accepted as true by the appellate court unless manifestly inconsistent with the admitted facts.

(7)  *Estoppel.*

Where one having only a limited interest in a tract of land conveys the property to another by deed or mortgage, and the owner receives the benefit of any part of the proceeds knowing the facts, he is estopped to deny that such deed or mortgage conveys a good title; or being the owner, though ignorant of the facts when he receives the proceeds, afterwards learns the truth, his retention of the proceeds thereafter estops him from disputing the validity of the conveyance; also, if knowingly and without disclosing his title he stands by and permits his property to be mortgaged or sold by another to one who is to the owner's knowledge relying upon the apparent ownership of the person executing the conveyance, such conduct, irrespective of who benefits by the transaction, will estop the owner from asserting his title against the mortgagee or grantee.

BILL IN EQUITY.  Heard on appeal of complainant and decree affirmed.

PARKHURST, J.  This cause is a suit in equity to restrain the foreclosure by the defendant of a mortgage of real estate situated in Providence, which was given to the defendant by the complainant's father.  It was heard in the Superior Court upon bill, answer, replication and oral testimony, and a final decree was entered in accordance with a rescript of Tanner, P. J., dismissing the bill of complaint.

The cause is now before this court upon the complainant's appeal from this decree.

The vital questions at issue are:

(1)   Whether the mortgagor, who is now dead, had more than a life estate in the property mortgaged; and

(2)   If the mortgagor had only a life estate, whether the complainant is estopped by his conduct to deny that the mortgage covers the fee in the property.

The following facts were agreed upon by the parties, and a stipulation to that effect was filed with the Superior Court:

At the time of her death Mary A. Gaddes, wife of William Gaddes and mother of the complainant, was the owner in fee simple of the premises in question, described as lots 340 and 341 on a plat entitled "Plat of the Rutenburg House Lots belonging to the Heirs of Samuel Ward and to Richard Waterman, by Cushing & Farnum, 1853," which plat is recorded in the office of the Recorder of Deeds in Providence on Plat Card 312.

Mary A. Gaddes died intestate in 1894, leaving William Gaddes, her husband, tenant by the curtesy, and the complainant, her son and only child, as sole heir at law.   On December 5, 1894, William Gaddes quitclaimed his interest in the property as tenant by the curtesy to George D. Lansing.   On April 6, 1897, George D. Lansing quitclaimed his interest to James Davis, expressly defining it as the tenancy by the curtesy conveyed by William Gaddes to him.   On May 11, 1897, James Davis quit claimed his interest to William Gaddes and the complainant, expressly defining the estate conveyed as that acquired under the deed from George D. Lansing to him.   On May 12, 1897, William Gaddes and the complainant mortgaged the whole of the property in fee to Elizabeth A. Davis for $1,000.

On July 25, 1898, the complainant executed a deed of the property to William Gaddes, the material portion of which is as follows:   "*Know all Men by These Presents,*

"That I, Raymond W. Gaddes  .  . in consideration of the sum of ten dollars to me paid by William Gaddes of said Pawtucket, the receipt whereof is hereby acknowledged, do hereby remise, release, and forever quitclaim, unto him, the said William Gaddes, his heirs and assigns forever, all

the right, title, interest, property, claim and demand which I now have, or of right ought to have or claim in and to

"A certain tract of land with all the buildings and improvements thereon, situate in the city of Providence, in said county and state, laid out and designated as lots numbers three hundred and forty (340) and three hundred and forty-one (341), on a plat entitled 'Plat of the Rutenburg house lots belonging to the heirs of Samuel Ward and to Richard Waterman, by Cushing and Farnum, 1853' a copy of said plat is on record in the Recorder's Office in said Providence on Card 312. The estate hereby conveyed is an undivided half part of the above described property, which was conveyed to the parties hereto by deed from James Davis dated May 11, 1897, and recorded in Deed Book 411 at page 97 in said Recorder's Office.

"To have and to hold the same with all the rights, privileges and appurtenances thereunto appertaining unto, and to the use of him the said William Gaddes his heirs and assigns forever."

On July 27, 1898, William Gaddes executed a mortgage of the property to Horace Z. Baker for $300. On November 12, 1900, William Gaddes executed the mortgage in question to the defendant for $1,300. This mortgage covered all the interest of any kind, legal or equitable, which William Gaddes had in the property at that time. The mortgage was recorded on November 12, 1900, and on this date the Davis and Baker mortgages were discharged.

The material provisions of the defendant's mortgage are as follows:

"*Know All Men by These Presents,*

"That I, WILLIAM GADDES, . . . in consideration of the sum of THIRTEEN HUNDRED DOLLARS, and other valuable considerations, paid by the PAW-TUCKET INSTITUTION for SAVINGS, . . . the receipt whereof is hereby acknowledged, do hereby give, grant, bargain, sell and convey to the said Pawtucket

Institution for Savings, its successors and assigns forever.

"A CERTAIN TRACT OF LAND, with the buildings and improvements thereon, situated in the city of Providence, in the County of Providence, in the State of Rhode Island, laid out and designated as lots numbered three hundred forty (340) and three hundred forty-one (341) on a plat entitled 'Plat of the Rutenburg House Lots belonging to the heirs of Samuel Ward and to Richard Waterman by Cushing and Farnum 1853 a copy of said plat is on file in the Recorder's Office in said Providence on Card 312, being the same premises described in a deed from James Davis to this grantor and Raymond W. Gaddes dated May 11th, 1897, and recorded in book 411 page 97 of the records of said Providence; also a deed from Raymond W. Gaddes to this grantor, dated July 25th, 1898 and recorded in book 419 page 47 of the records of said Providence.

"TO HAVE AND TO HOLD the above granted and bargained premises, with all the privileges and appurtenances to the same belonging, to the said Pawtucket Institution for Savings, its successors and assigns, to its and their use and behoof, forever.   And I, the said grantor, for myself and my heirs, executors and administrators, do covenant with the said Pawtucket Institution for Savings, its successors and assigns, that I am lawfully seized in fee simple of the aforegranted premises; that they are free from all incumbrances, that I have good right to sell and convey the same to the said Institution for Savings, its successors and assigns forever to hold as aforesaid; and that I will, and my heirs, executors and administrators shall warrant and defend the same to the said Institution for Savings, its successors and assigns forever, against the lawful claims and demands of all persons."

On March 25, 1907, William Gaddes executed to the complainant a deed, purporting to re-convey to the complainant an undivided half interest in the premises in question.   On March 30, 1908, William Gaddes deceased intestate and unmarried, leaving the complainant his sole heir at

law and next of kin.   On May 12, 1908, the complainant paid to the defendant the semi-annual installment of interest due on that day on the defendant's mortgage.   No interest on the mortgage has since been paid.

The complainant is the owner in fee of the premises except in so far as they may be found to be subject to the mortgage to the defendant.

In addition to the foregoing facts, which are admitted by both parties, evidence was introduced by the defendant tending to establish the following facts:

For a period of ten years, commencing in 1896 or 1897, Horace Z. Baker acted as agent for the complainant and William Gaddes in managing and collecting the rents of this property.   In the year 1898 the complainant and his father, William Gaddes, requested Baker to loan them a sum of money, taking as security a mortgage on William's half of the property in question.   Baker, however, refused to take a mortgage upon less than the entire property.   In Baker's own language: "Raymond wanted the money to pay Raymond's bills, and William wanted to give me a mortgage on his half to do it.   I told him no, that wouldn't do. . . .   Raymond spoke up and says: 'I will convey my half to my father, and let him take the mortgage straight.' I said, 'If you sell your interest to your father straight out I will take the mortgage that way,' and he done so right away."

A mortgage for $300 was thereupon given by William to Baker.

It appears from the agreed facts above stated, and from the evidence, that the complainant executed a deed to the premises in question, or at least to some portion of them, to William Gaddes under date of July 25, 1898, and that on July 27, 1898, William executed a mortgage to Baker for $300.   The complainant was present when this mortgage to Baker was executed and delivered, and a portion at least of the money advanced was paid to the complainant or applied for his benefit.   Likewise a part at least of the money

raised by the mortgage from the complainant and William Gaddes to Elizabeth A. Davis was paid to complainant, or applied for his benefit.

Some time after the execution of the mortgage to Baker, the complainant and William Gaddes requested Baker (as he testifies) to go to the defendant bank and see if he could make arrangements for a mortgage on the property to take up the Davis and Baker mortgages.   Baker did as he was requested, and succeeded in getting the defendant to loan $1,300 upon a mortgage of the property.   This mortgage, which was executed by William Gaddes to the defendant under date of November 12, 1900, is the mortgage, the foreclosure of which the complainant is now seeking to restrain.   The complainant (as Baker further testifies) read the mortgage before it was executed, and made no claim that it did not, as it purported to do, operate as a valid conveyance of the fee in the entire property.   The proceeds of this mortgage were used to pay off the Davis and Baker mortgages, which were for $1,000 and $300, respectively.

In contradiction of Baker's testimony, the complainant testified that he never knew either of the mortgage to Baker or the mortgage to the defendant until after the death of William Gaddes in March, 1908, and in general the complainant flatly denied the truth of Baker's testimony.

In corroboration of Baker's testimony, Edward W. Blodgett, called by the defendant, testified that the complainant during the lifetime of William Gaddes talked with witness about the payment of the interest on the defendant's mortgage.

The justice who heard the case believed the testimony of Baker rather than that of the complainant, and gave his decision for the respondent, in the terms following: "We think the purpose of the complainant in making this last named deed was to convey all his title to his father so that his father could give a mortgage upon the whole fee of the property.   This being so, we think the complainant's deed

to his father of July 25, 1898, must be construed as vesting all the complainant's title in William Gaddes. We think the mortgage which is the subject of this suit, from William Gaddes to the respondent, recorded November 12, 1900, conveyed the entire fee to the respondent, and that under well-established rules of construction, the references in said last named mortgage to other conveyances are to be taken simply as a guide to the chain of title and have no limiting effect on the conveyance. We credit the testimony of Horace Z. Baker that the complainant read the mortgage deed to the respondent before executing it.

"We think also that the complainant, having received a portion of the proceeds of the Baker mortgage after having conveyed his interest to his father for the purpose of enabling him to mortgage the entire fee, would be estopped to deny that the respondent's mortgage covered the entire fee in his father by merger with the father's prior interest, in accordance with the construction which we have already adopted.

"The complainant's bill is therefore denied and dismissed."

The complainant has appealed from the decree entered in accordance with the rescript, and the case is now before this court upon the appeal.

(1)    As above stated, Mary A. Gaddes, the complainant's mother, was seized in fee of the premises during her lifetime. At her death the property passed to the complainant, her sole heir at law, subject to a tenancy by the curtesy in her husband, William. Thereafter William quitclaimed his interest as tenant by the curtesy to George D. Lansing, the latter conveyed to James Davis, and James Davis conveyed to William and the complainant. These last three deeds were conveyances of William's estate by curtesy. After the deed from James Davis the condition of the title therefore was this: William had a life estate in one-half of the property, and the complainant had a fee simple estate in remainder in the *whole* property and an estate for the life

of William in *one-half* thereof. These two estates of the complainant merged, giving the complainant a present estate in fee in one-half of the property, and a remainder in fee in the other half, subject to William's life estate in that half. 20 Am. & Eng. Enc. of Law (2d. ed.) 592; 1 Tiffany on Real Prop. pp. 76–77; *Pynchon* v. *Stearns*, 11 Met. (Mass.) 304; *Mangum* v. *Piester*, 16 S. C. 316.

With the title in this condition the complainant executed the deed of July 25, 1898, to William, and thereafter, on November 12, 1900, William executed the mortgage to the defendant. It is admitted by the complainant that this mortgage covered the whole of William's interest in the property. The sole issue, therefore, is, what William's interest was at the date of the execution of the mortgage,— a matter which depends upon the construction of the deed of July 25, 1898, from the complainant to William.

The first sentence of this deed is as follows:

"*Know All Men by These Presents,*

"That I, RAYMOND W. GADDES of Pawtucket in the County of Providence, and State of Rhode Island in consideration of the sum of TEN DOLLARS to me paid by WILLIAM GADDES of said Pawtucket the receipt whereof is hereby acknowledged, do hereby remise, release, and forever QUITCLAIM, unto him the said William Gaddes his heirs and assigns forever, all the right, title, interest, property, claim and demand, which I now have, or of right ought to have or claim in and to

"A CERTAIN TRACT OF LAND with all the buildings and improvements thereon, situate in the city of Providence in said county and state, laid out and designated as lots, numbers three hundred and forty, (340) and three hundred and forty-one (341), on a plat entitled 'Plat of the Rutenburg house lots belonging to the heirs of Samuel Ward and to Richard Waterman, by Cushing and Farnum, 1853 a copy of said plat is on record in the Recorder's Office in said Providence, on Card 312."

It will be noted that there is no ambiguity or obscurity

in these words.   By them the complainant's entire interest in the whole of lots 340 and 341 is conveyed in unmistakable terms.

The second sentence of the deed is as follows: "The estate hereby conveyed is an undivided half part of the above described property, which was conveyed to the parties hereto by deed from James Davis dated May 11, 1897, and recorded in Deed Book 411 at Page 97 in said Recorder's Office."

This sentence does not purport to limit or restrict in any way the interest granted by the first sentence.   It is merely a statement that the complainant's entire interest (which is the interest conveyed) is "an undivided half," with a reference to the source of his title.   Looking at the deed alone there is no repugnancy apparent in its provisions.   But when the outside facts are considered, it is at once seen that the first and second sentences are not consistent.   The complainant instead of having a half interest had an estate in fee in the whole of the premises, subject to his father's life estate in an undivided half.   To say that the complainant's interest was a half interest, therefore, was to mis-state the facts.   Does this mis-statement prevent the deed from operating as a conveyance of the complainant's entire interest?

(2)    In construing a deed the object sought is to ascertain and give effect to the intention of the parties.   The court, however, seeks only to translate the instrument before it, not to create a new and different one.   Accordingly the intention sought is only that expressed in the deed, and not some secret, unexpressed intention, even though the latter be that actually in mind at the time of execution.   This is the fundamental rule of all judicial interpretation.   *Co-operative Building Bank* v. *Hawkins,* 30 R. I. 171, 181; *Hoyt* v. *Ketcham,* 54 Conn. 60; 17 Am. & Eng. Encyc. of Law (2d ed.) 2, 3.

This principle in no way conflicts with the rule that in order to ascertain the meaning of what the parties have said,

the court will consider all the surrounding circumstances existing at the time of execution. The situation of the parties, the subject–matter of the conveyance, and the acts of the parties at and subsequent to the time of execution are important as throwing light upon the significance of the express terms of the instrument in the hands of the court, and enabling it by reading the instrument so illumined to perform its duty of interpretation. And to this extent extrinsic evidence is undoubtedly admissible. *Waterman* v. *Andrews*, 14 R. I. 589, 595; *King* v. *Merriman*, 38 Minn. 47, 54; 13 Cyc. 607–608. But no declarations by the parties as to parol understandings or agreements before or at the time of the execution of the instruments, to show their intention will be considered so as to vary the written terms. This is not a rule of evidence, but a rule of substantive law, and even though such declarations may have been introduced in evidence through failure of the opposing party to object, they will not be considered in construing the deed. *Pitcairn* v. *Philip Hiss Co.*, 125 Fed. Rep. 110, 113, 114; 17 Cyc. 570. If, after all, the interpretation to be given to the deed remains doubtful, the court will adopt the construction which is most favorable to the grantee. *Waterman* v. *Andrews*, 14 R. I. 589, 595.

It is a well-recognized rule that after having once granted an estate in a deed, the grantor cannot restrict or nullify it by a subsequent clause. *Pike* v. *Munroe*, 36 Me. 309, 316; 17 Am. & Eng. Encyc. of Law (2d. ed.) 8. And see *Phillips* v. *Brown*, 16 R. I. 279, 281. Likewise, where the description in the deed of the property and estate conveyed is clear and complete, a reference to another deed will not operate to restrict the amount of the property or the *quantum* of the estate conveyed. *Smith* v. *Sweat*, 90 Me. 528; 13 Cyc. 635. And see *Kenyon* v. *Nichols*, 1 R. I. 411, 415.

In *Moran* v. *Somes*, 154 Mass. 200 (1891), the facts were these: Samuel M. Somes, being the owner of four undivided fifths of a parcel of land, one-fifth by inheritance from his mother, and the three remaining fifths by purchase from his

three brothers, Francis L., Hiram S., and George, executed a
deed to one Rand, whereby he conveyed "unto the said
Rand and his heirs and assigns, all my right, title, and in-
terest in and to" such parcel, "being the same estate de-
scribed in a deed from Francis L. Somes to me . . . and
a deed from Hiram S. Somes to me, . . . my interest
in said estate being three undivided fifths of the same."
The court said: "We think the deed from Somes to Rand
must be held to convey all the interest which the grantor
had, at the time of its execution and delivery, in the
tract described in it.    It must be taken most strongly
against the grantor, and the words 'all my right, title and
interest' are not to be cut down by the subsequent refer-
ence to the two deeds, and the statement that his interest
in the estate is three undivided fifths, which may well have
arisen from forgetfulness, and was evidently a mistake.
*Worthington* v. *Hylyer*, 4 Mass. 196; *Bott* v. *Burnell*, 11
Mass. 163; *Melvin* v. *Proprietors of Locks & Canals*, 5
Met. 15; *Hastings* v. *Hastings*, 110 Mass. 280.    Moreover,
the statement that his interest is three-fifths purports
to be made as a statement of all his interest, and there
are no words which indicate *per se* any intention to convey
less than his whole interest.    The references to the deeds
are evidently made for the purpose of describing the prop-
erty, and not the amount of interest or the quantity of the
estate conveyed."

In *McLennan* v. *McDonnell*, 78 Cal. 273 (1889), one of the
questions involved was the construction of a deed conveying
"unto the said party of the second part, and to his heirs and
assigns forever, all the right, title and interest of the party
of the first part, the same being a one-half undivided interest
in and to the following described real property," etc.    The
grantor, or party of the first part, one Campbell, owned
more than a half interest in the property described.    The
court in holding that the grantor's entire interest passed
under the deed, said (p. 277): "This deed clearly conveys
'all the right, title, and interest' of Campbell.    The words

'being a one-half undivided interest' are 'not words limiting the extent of the previous terms of conveyance or excepting out any interest conveyed by the previous terms.' . *Dodge* v. *Walley*, 22 Cal. 224; *Wilcoxson* v. *Sprague*, 51 Cal. 640.''

In *Dodge* v. *Walley*, 22 Cal. 224 (1863), the court had . before it the construction of a sheriff's deed conveying ''All the right, title, and interest of said Daniel S. Clark, against whom the said writs of execution were issued as aforesaid, of, in, and to the following described property, to wit: That certain tract and parcel of land and premises known as the 'Bull Head Ranch,' lying and being situate in Contra Costa County of said State, and being a leasehold unexpired.' The court, in holding that the deed conveyed not only the grantor's leasehold interest, but also every other interest which he had in the premises, said (p. 228): We think this is the proper construction of the deed. It distinctly conveys 'all the right, title and interest of said Daniel S. Clark' in and to the ranch. If it stopped here, there could be no room for doubt as to its meaning. To this point, it clearly conveys all the interest of Clark in the property, which would carry the interest he acquired from Walley and every other person. The latter part of the description, where it says 'being a leasehold unexpired,' *etc.*, are not words *limiting* the extent of the previous terms of conveyance, or *excepting* out any interest conveyed by the previous terms; but merely a statement of the officer and grantor of what he supposed or understood was the nature and character of the interest of Clark. He uses no terms limiting or confining his conveyance to such unexpired leasehold interest. If he had used such terms, it would have presented a case of greater difficulty; but in the absence of language qualifying or limiting the general terms conveying all his interest, we would not be justified in restricting the conveyance as contended for by the appellant. Deeds are always to be construed most strongly against the grantor when there is any ambiguity or uncertainty.''

In *Drinkwater* v. *Sawyer*, 7 Me. 366, A., having title to

a farm by two several deeds of separate parcels thereof made by the same grantor at different times, executed a deed to a third person, using language sufficient to include the whole farm, and then added that the premises were the same which he purchased by deed of a certain date, referring to the latter only of his title deeds. The court held that the whole farm passed and that the recital of the source of the grantor's title was superfluous, the description being otherwise sufficient.

In *Smith* v. *Sweat*, 90 Me. 528. A. and B. mortgaged property which they owned to C., describing the property particularly in the granting clause and then adding "meaning and intending hereby to convey all the right, title and interest which we acquired by deed of James P. Armburst to us, dated May 7, A. D. 1880, recorded in Hancock Registry of Deeds, Book 170, page 190, and deed from said Armburst to us of even date herewith." The deeds referred to conveyed only a portion of the property particularly described in the preceding clause of the mortgage. In holding that all the property passed under the mortgage the court said (p. 533): "It is too well settled to require the citation of authorities that a particular description of premises conveyed, when such particular description is definite and certain, will control a general reference to another deed as the source of title. So a clause in a deed, at the end of a particular description of the premises by metes and bounds, 'meaning and intending to convey the same premises conveyed to me,' *etc.*, does not enlarge or limit the grant." And see, also, *Green Bay, etc. Co.* v. *Hewett*, 55 Wis. 96; *Hastings* v. *Hastings*, 110 Mass. 280; *Eldred* v. *Davis*, 181 Mass. 498; *Melvin* v. *Proprietors, etc.*, 5 Met. 15; *Jones* v. *Webster Woolen Co.*, 85 Me. 210; *Crosby* v. *Bradbury*, 20 Me. 61; *Chaplin* v. *Srodes*, 7 Watts (Pa.) 410; *Barksdale* v. *Barksdale*, 92 Miss. 166.

In the light of these decisions (and none to the contrary have been cited or brought to our attention), we have no doubt as to the proper construction of the deed from the

complainant to William Gaddes.   The intention to convey the complainant's entire interest is clear, although it is mistakenly referred to "as an undivided half part" of the premises described.   The reference to the deed from James Davis, which conveyed only a life estate to the complainant and William, was plainly for the purpose of indicating the source of the complainant's title and of assisting in identifying the property conveyed.   It was clearly not made for the purpose of describing or limiting the extent of the interest or the quantity of the estate conveyed.

Not only is this the construction demanded by the rules of law, but it is manifestly in accordance with the actual intention of the parties, as shown by the surrounding circumstances.   According to the testimony of Horace Z. Baker, the deed was given in order that William Gaddes might mortgage the entire property in fee to Baker, and the complainant was fully aware of this purpose and a party to the whole transaction.   As before remarked, the trial court believed Baker's testimony, and hence it should be accepted as true by this court unless manifestly inconsistent with the admitted facts.

(6)   The Supreme Judicial Court of Massachusetts in laying down the well-established rule that upon an appeal from a decree of a court of equity the decree will not be reversed in matters of fact arising on oral testimony introduced in the court below, unless it is plainly wrong, states the reason of this rule as follows:   "Great weight is justly given to the conclusions on questions of fact of the justice who hears the case, for the reason that he has an opportunity to observe the conduct of the witnesses, their fairness and intelligence, and can judge better than the full court possibly can of the degree of credibility to be given to their testimony."   *Chase* v. *Hubbard,* 153 Mass. 91, 92.   See also *Loud* v. *Barnes,* 154 Mass. 344, 345; *Colbert* v. *Moore,* 185 Mass. 227, 228.

(7)   We are also of the opinion that there was ample evidence to warrant the Superior Court in its conclusion that the complainant, by his conduct was estopped to deny that the

respondent's mortgage covered the entire fee. The complainant received part of the money from the two original mortgages; and, upon credible testimony, was fully aware of the negotiation of the mortgage to the respondent for the purpose of taking up the two original mortgages, and of the use of the money loaned by the respondent for that purpose. We are well satisfied that such conduct on his part works an estoppel in favor of the respondent.

Where a stranger to the title, or one having only a limited interest in a tract of land, conveys the property to another by deed or mortgage, and the owner receives the benefit of any part of the proceeds knowing the facts, he is estopped to deny that the deed or mortgage conveys a good title. And likewise if the owner, though ignorant of the facts when he receives the proceeds, afterwards learns the truth, his retention of the proceeds thereafter estops him from disputing the validity and effect of the conveyance. *Brewster* v. *Baker*, 16 Barb. (N. Y.) 613, 618; *Kahn* v. *Peter*, 104 Ala. 523; *Ansonia* v. *Cooper*, 66 Conn. 184; 16 Cyc. 787–791. See, also, *Brewer* v. *Nash*, 16 R. I. 458; *Robinson* v. *Bailey*, 19 R. I. 464; *East Greenwich Inst. for Savings* v. *Kenyon*, 20 R. I. 110.

Furthermore, if the owner, knowingly and without disclosing his title, stands by and permits his property to be mortgaged or sold by another to one who is, to the owner's knowledge, relying on the apparent ownership of the person executing the conveyance, such conduct, irrespective of who benefits by the transaction, will estop the owner from asserting his title against the mortgagee or grantee. *Thompson* v. *Sanborn*, 11 N. H. 201; *Crawford* v. *Bertholf*, 1 N. J. Eq. 458, 471; *Bryan* v. *Ramirez*, 8 Cal. 461; *Brewster* v. *Baker*, 16 Barb. (N. Y.) 613, 618; Bigelow on Estoppel (5th ed.) 586; 11 Am. & Eng. Encyc. of Law (2d ed.) 427–430; 16 Cyc. 761–764. And see *East Greenwich Inst. for Savings* v. *Kenyon*, 20 R. I. 110.

The phrase "stands by" in the foregoing rule does not mean necessarily an actual presence, "but implies knowledge

under such circumstances as render it the duty of the possessor to communicate it." *Gatling* v. *Rodman,* 6 Ind. 289, 292.

Upon a careful review of the whole case, we are of the opinion that there was no error in the decree of the Superior Court, and the same is hereby affirmed.

The cause is remanded to the Superior Court for further proceedings.

*Hugh J. Carroll,* for complainant.

*Eliot G. Parkhurst, Robert B. Dresser, Edwards & Angell,* for respondent.