MARY CHAPMAN *vs.* ANNIE COONEY, Trustee.

PROVIDENCE—FEBRUARY 12, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Mortgages. Accounting. Redemption. Interest.*

Upon a bill for an accounting between a mortgagor and second mortgagee, the report of the master showed that he had treated moneys paid by mortgagee on account of interest and principal of mortgages held by bank as further advances by mortgagee to mortgagor, and had allowed interest on each of said payments to time of next annual rest; that at such time he had charged mortgagee with the rental for the year before, and credited him with all sums paid during the year for repairs, etc. Interest was allowed upon the new balance until the next rest period.

On exceptions:—

*Held*, no error.

(2) *Waste. Mortgages. Accounting. Redemption.*

A. advanced certain moneys to B. and took from B. a deed of the real es-

42

tate, absolute in form, and executed an agreement that he held the estate in trust and would reconvey the same to B. at any time upon repayment of the sums advanced. At the same time A. assumed payment of the mortgage held by C. upon the ᵤtate. B. continued to live in the premises for a time, but subsequerᵤly notified A. that he had removed; whereupon A. took possession of the ϝroperty and managed the same and collected the rents and profits. At such time the exterior of the buildings and fences was out of repair, and their condition became worse during the time that A. continued in possession, due to the natural wear and tear. The estate was not permanently injured, but it appeared could be put in good condition by certain repairs:—

*Held*, that the question whether waste has been committed in a given case is to be determined in view of the particular facts and circumstances appearing in the case.

*Held*, further, that, under the facts of the case at bar, A. had not been guilty either of voluntary or permissive waste, there being no evidence of such gross negligence as would be necessary to charge him with the latter.

*Held*, further, that, had the necessary repairs been made by A., he would. have been entitled to charge the expense thereof to B.; and as they were not made, B. in effect recovered from A. that amount, making him whole.

(3) *Accounting. Redemption. Mortgages. Rent.*

A mortgagee in possession, in accounting with the mortgagor on redemption, should be charged with the amount of rent actually received, or which he might have received with the exercise of reasonable care and diligence.

(4) *Mortgages. Junior Encumbrancer. Interest. Compound Interest.*

In an accounting between a junior encumbrancer and the mortgagor, the former is not entitled to compound interest upon sums paid by him on account of interest and principal of the prior encumbrance, but is entitled only to be credited with the sums so paid, together with interest thereon at the legal rate.

(5) *Mortgages. Accounting. Compensation.*

A mortgagee in possession cannot, in the absence of some special agreement, recover compensation for his labor in caring for the mortgaged estate.

Following *Allen* v. *Robbins*, 7 R. I. 33.

Bill in Equity for an accounting. Heard on exceptions to report of master, and exceptions overruled.

Tillinghast, J. At the trial of this case upon bill, answer, and proof, the court found that the complainant was entitled to a reconveyance of the real estate in question upon payment by her to the respondent of the amount due under the

agreement to reconvey, entered into on May 6, 1896 (a copy of which agreement is annexed to the bill), and referred the case to Walter S. Reynolds, Esq., a master in chancery, for an accounting of the rents and profits, and also of waste, if any, caused or permitted by the respondent while in possession of said real estate.

(1)    The master has made his report in the premises, and the case is now before us on exceptions thereto.

The first exception taken by complainant is to the disallowance of interest on the several amounts of money received by the respondent from rents and profits out of said estate.

This exception is clearly untenable, as it is not based on the facts. The report sets out that: "Following the well-established rule, the master has made annual rests in stating the account. He has treated moneys paid by respondent on account of interest and principal of mortgages held by the savings bank as further advances by the respondent to the complainant, and has allowed interest on each of said payments to the time of the next annual rest. At the time of each annual rest, he has charged respondent with the rental for the year before and credited her with all sums paid during the year for repairs, taxes, etc. Interest is allowed upon the new balance thus obtained until the next rest period. The complainant, by having the balance of the rents and profits over repairs, taxes, etc., for the year, applied to pay the interest due respondent, and to reduce the principal so far as possible, has thus been allowed the interest on amounts of money received by respondent from rents and profits to which she is justly entitled."

The rule thus adopted by the master is the proper one to be followed in a case of this sort, and hence this exception must be overruled. Jones Mort. § 1139–40, and cases there cited.

(2)    The second exception is to the disallowance by the master of the complainant's claim of waste, done and permitted by the respondent.

The major part of the voluminous testimony taken in the case relates to the question of whether the respondent, during the time of her occupation of the premises, caused or per-

mitted any waste thereto for which she should be charged in the accounting. And upon consideration thereof by the master he has found that neither voluntary nor permissive waste is shown.

The rule which he adopted in deciding this question was that which is laid down in *Wragg* v. *Denham*, 2 You. & Coll. Ex. p. 117.

In that case the court said: "It is clear that a mortgagee ought not to be charged with deterioration arising in the ordinary way, by reason of houses and buildings of a perishable nature decaying by time, which was the case in *Anstruther*. There the mortgagee was in possession of the premises for forty years, and during so long a time the decay would naturally take place even supposing the premises to be repaired in the meantime in the ordinary way. I think, also, that a mortgagee ought not to be charged exactly with the same degree of care as a man is supposed to take who keeps possession of his own property; but if there be gross negligence by which the property is deteriorated in value, the mortgagee who is in possession is trustee for the mortgagor to that extent that he ought to be made responsible for that deterioration during the time of his possession. It is not necessary to go to the length of showing fraud in the mortgagee; gross negligence is sufficient."

Waste may be shortly defined as the doing of those acts which cause lasting damage to the freehold or inheritance, or the neglect or omission to do those acts which are required to prevent lasting damage to the freehold or inheritance.

The term is not an arbitrary one, however, to be applied inflexibly, without regard to the quality of the estate or the relation to it of the person charged to have committed the wrong, but the question as to whether it has been committed in a given case is to be determined in view of the particular facts and circumstances appearing in that case. As said by the court in *McCord* v. *Oakland Co.*, 64 Cal. p. 140: "The law on this subject must be applied with reasonable regard to the circumstances." Several of the cases cited by the complainant's counsel fully sustain this position. See *King* v.

*Miller,* 99 N. C. 583; *McGregor* v. *Brown,* 10 N. Y. 114; *Proffitt* v. *Henderson,* 29 Mo. 325; 1 Wash. R. P. 6 ed. § 291.

For cases bearing upon the law of waste in this State, see *Clemence* v. *Steere,* 1 R. I. 272; *Lester* v. *Young,* 14 R. I. 579; *Sampson* v. *Grogan,* 21 R. I. 174.

In the case at bar the facts connected with the taking possession and occupancy of the premises by the respondent are as follows, viz.: The respondent advanced certain moneys to the complainant and her husband, and took from the former a deed of the real estate in question, absolute in form, and executed a contemporaneous agreement in writing to the effect that she held the estate in trust and would reconvey the same to the grantor at any time upon repayment of the amount advanced. At the same time the respondent assumed the payment of the mortgage upon said real estate, which was held by the Providence County Savings Bank.

The complainant continued to live on the premises in question from the date of said deed until May 6th, 1898, at which time she removed therefrom and notified the respondent that she had done so; whereupon the latter took possession of the property, and has from that time to the present managed the same and collected the rents and profits thereof.

In view of these facts the master finds that the respondent must be held to have taken possession of the premises with the consent of the grantor, under the conveyance of May 6th, 1898, and that the relation of the respondent to said property from the time of her taking possession has been that of a mortgagee in possession. This finding was clearly in accordance with the rescript heretofore handed down in the case, and we therefore affirm the same.

The master finds that there has been no voluntary waste committed by the respondent while in possession of the premises as aforesaid; and, upon examination of the testimony bearing upon this question, we think this finding was clearly correct.

As to the question of whether the respondent has been guilty of permissive waste, the master finds that she has not been guilty of gross negligence in the management of the

property; and hence, under the rule adopted by him as aforesaid, that no permissive .waste is shown.

The facts which he finds, and upon which he bases his conclusion, are stated by him as follows: "The exterior of the buildings and the fences are now considerably out of repair. From the estimates of expert witnesses, produced by both sides, I find the probable costs of putting the property in good repair as follows, viz.: Carpentry, $265.00 ($155.00 of which is for repairing the fences); painting, $250.00; and glazing, $10.00. But the property was in need of repair when the respondent took possession, although not to such an extent as at present. There is no testimony that it is permanently injured, but there is testimony to the effect that it can be put in as good condition as ever by the proposed repairs. All agreed that the change in condition since the time the respondent took possession has been due to the natural wear and tear and action of the elements. The broken windows and missing blinds form an exception; but as to these there is no evidence that the respondent is to blame for the breaking of the windows or the loss of the blinds."

In coming to the conclusion that this case is one where the respondent should only be charged with permissive waste upon proof of gross negligence on her part, he takes into account the following facts, viz.: "The respondent went into possession only because the complainant abandoned the property and notified respondent that she had done so; thus at least consenting, if not inviting the respondent to take possession. The money was advanced by the respondent, and the original conveyance and agreement to reconvey were evidently executed at a time when the parties were friendly, for the purpose of helping the complainant and her husband out of financial difficulties. The fences were old, and some of them poor and in need of repair, and some of the buildings were in need of paint and of some repairs, when respondent took possession; and I am fully satisfied that there has been little or no deterioration of said houses on the interior. There is no proof of any destruction, or of any neglect other than the neglect to make certain exterior repairs of defects which

are the natural results of lapse of time and action of the elements, and a neglect to paint the exterior of said building, except the failure to repair the blinds and reset the glass. There is no proof that any of said neglect to repair or to paint has worked any permanent injury to said property or made it untenantable. The property has been continuously tenanted since the respondent was in possession thereof. There is no evidence that the complainant has ever criticised the respondent's care and management of said property until the bringing of the present suit. The respondent has made some repairs, and has paid out $900.00 of her own money voluntarily in reducing the mortgages, which certainly shows good faith on her part. There was some testimony to the effect that the cost of keeping said property in good repair would have been less than the cost of putting it in good repair at the present time; but no witness attempted to estimate the difference. One expert witness said he could not do so."

In view of these facts the master concludes his finding on this branch of the case as follows: "In the opinion of the master the present condition of said property is not such but what, had the respondent, immediately before this suit was begun, made the requisite repairs to put said property in a fair condition, provided the net income therefrom then in her hands was sufficient, she should in justice and equity have been allowed to charge the reasonable cost of such repairs. To hold that she is now liable for the deterioration rendering necessary such repairs, as a penalty, or in other words to now compel her to turn over the fund out of which she might just before have made such repairs, and the price of such repairs, or any part thereof in addition, does not appeal to the master as being in accordance with equity and good conscience."

We think the reasoning of the master is sound, and that, in view of the somewhat peculiar circumstances appearing in the case, his conclusion is correct.

It is true the evidence shows that the property has been neglected, and is sadly in need of repairs. But it appears that it was in bad condition when the complainant abandoned

it and invited the respondent (impliedly at least) to take possession thereof under the deed.

It further appears that the property has not permanently deteriorated in value; that is, that it has not sustained lasting damage by reason of the neglect to repair. And hence it would seem that the complainant will be as well off, with the additional credit which she receives in the accounting, as she would have been had the repairs been made by the respondent and the expense thereof charged to the complainant in the accounting. In other words, if the repairs had been made by the respondent, of course she would have been entitled to charge the expense thereof to the complainant. But as they were not made, the complainant in effect recovers from the respondent the amount which might have been spent in making the necessary repairs, and this makes her whole in the premises.

The law bearing upon the question of waste as applied to a mortgagee in possession is not entirely clear, one class of cases holding that he must make repairs as he would if he were the prudent owner, and must keep the property in as good condition as it was in when he received it, and that he should be charged with any loss or damage arising from his failure to maintain this standard. See *Barnett* v. *Nelson*, 54 Ia. 41, and cases cited; *Shaeffer* v. *Chambers*, 6 Halst. Ch (N. J.) 548; while another class of cases holds that the mortgagee is liable only for voluntary waste, and that he cannot be charged with deterioration arising in the ordinary way from waste and decay from lapse of time. In a note to the text on * p. 167, vol. 4, Kent. Com. 12th ed., the law is stated thus:

"The mortgagee is bound to keep the estate in necessary repair, and if he be guilty of willful default or gross neglect as to repairs, he is responsible for loss and damages occasioned thereby. But he is not bound to repair against the natural effects of waste and decay from time." See cases there cited.

In *Dozier* v *Mitchell*, 65 Ala. 511, it is held that the mortgagee in possession is bound to make all reasonable and nec-

essary repairs, and is responsible for any loss or damage occasioned by his willful default or gross neglect in this regard.

But, however the law may be in this regard, we think it is clear that the master's finding upon the question of permissive waste was correct, in view of all the circumstances in the case, and, even adopting the rule which the first class of cases lays down instead of the one which the master adopted, we fail to see that the respondent has been guilty of waste; for, as already shown, his neglect to repair has not resulted in any permanent injury to the estate, and hence no damage has resulted to the complainant therefrom. Instead of getting her property back in the condition which it was when she abandoned it, which was bad, she gets it back in a somewhat worse condition, but she gets along with it the money which might have been used by the respondent in making needed repairs, which money can now be used by her for the same purpose. So that, as hereinbefore suggested, she practically stands the same as if the repairs had been duly made by the respondent.

The complainant's second exception is therefore overruled.

The third exception is to the disallowance of additional rent claimed by the complainant.

(3)     The simple question raised by this exception is whether the respondent should be charged for the amount of rent actually received by her, or for a larger sum.

The evidence shows that the respondent has kept the property fully rented during all the time since she took possession thereof  The rear house has been rented for $15.00 per month, and the front cottage for $9.00 per month, except that during the last ten months next before the hearing the respondent had reduced the rent of the cottage to $8.00 per month.

Up to the time when the respondent took possession of the property the complainant had occupied the rear house and had rented the front cottage for $9.00 per month.

The respondent's reason for making the reduction from $9.00 to $8.00 was that the tenant, who had been there a long time, could not afford to pay more than $8.00, and, as it was thought desirable to keep said tenant at $8.00 per month rather

than to have the tenement vacated and take the chances of obtaining another tenant at the former price, he reduced it $1.00 per month.

It is a matter of common knowledge that such a trivial reduction is often made by prudent landlords, and we see no reason to believe that the respondent was not exercising reasonable prudence in making the reduction.

The general rule, as held by the master, is that a mortgagee in possession, in accounting with the mortgagor on redemption, should be charged with the amount of rent which he has actually received, or which he might have received with the exercise of reasonable care and diligence. This rule is supported by *Hall* v. *Westcott*, 17 R. I. p. 506.

Jones Mort. vol. 2, 4th ed. p. 75, states the rule as follows: "It is the fault of the mortgagor that he lets the land fall into the hands of the mortgagee, and the mortgagor should be required to prove actual fraud or negligence on the part of the mortgagee before he can be charged for more than his actual receipts of rents and profits."

The matter of raising or lowering the rent in the case at bar was a matter for the sound discretion of the respondent, and it does not appear that she has not properly exercised the same in this matter.

The master finds that the respondent should only be charged with the amount of rent actually received.

We think this finding was correct, and we therefore overrule the complainant's third and last exception.

(4) We now come to the consideration of the exceptions taken by the respondent.

The first exception is to the disallowance by the master of compound interest on money paid out by the respondent for the benefit of the complainant. To be more specific, the exception is based upon the refusal of the master to allow compound interest upon the amounts paid to the Providence County Savings Bank on account of the mortgage held by said bank on the property in question, the respondent contending that, having made payments on said mortgage, she is justly entitled to be subrogated to the rights of the savings bank in

the premises. And that, as the complainant would have had to pay interest upon interest, under the mortgage, upon the amounts paid by respondent had she not paid the same, she was entitled to the same interest as the bank was receiving on the sums paid by her in reduction of the mortgage.

We fail to see the force of this contention.

The facts are simply these: The respondent was in possession of the property, supposing that she owned it. The savings bank held a mortgage on the property for $2,400.00, and the respondent paid the interest thereon as it fell due, and also paid, in various installments, sums amounting in the aggregate to $900.00 on the principal of said mortgage. She is therefore entitled in the accounting to be credited with the sums so paid, together with interest thereon at the legal rate, and this is all she is entitled to.

Even if she had paid compound interest, which she has not, it is hardly probable that a court of equity would allow her to recover it from the mortgagor, as it would clearly be her own fault and neglect if the installments of interest were not paid when due.

As to the contention that the respondent is entitled to compound interest on the amounts paid by her on the principal of the mortgage, we are utterly unable to discover upon what equitable or reasonable ground it is based; and counsel has not furnished us with any authority in support thereof.

That the case is not one where the doctrine of subrogation is applicable is clear. The respondent, as held by the master, is in legal effect a junior encumbrancer, who has paid the interest and certain installments only on the principal of the prior encumbrance. And the junior encumbrancer in such circumstances is not, in the absence of some special agreement, entitled to subrogation until the whole debt has been paid; that is, the rights of the mortgagee—the savings bank —must be entirely divested before another person can be substituted, by mere operation of law, in its place, as respects those rights, so as to have them vest in her. *Ganett* v. *Blodgett*, 39 N. H. 150; *Loeb* v. *Fleming*, 15 Ill. App. 503; Jones Mort. 4th ed. § 877. And this being so, the respondent

is entitled to no benefit under the contract between the mortgagor and the mortgagee. Nor is this any hardship upon the respondent, for she is awarded by the master's report the full amount advanced by her, with interest thereon at the legal rate. And interest upon interest is not a matter of right, independent of contract

(5) The second and last exception by the respondent is to the disallowance by the master of her claim for compensation for services in the care and management of the property.

This ruling by the master was based upon the decision of this court in *Allen* v. *Robbins*, 7 R. I. 33, in which it was held that a mortgagee in possession cannot, in the absence of some express stipulation to that effect, recover compensation for his labor in caring for the mortgaged estate. As that decision is clearly controlling upon this question, there is no occasion for any discussion thereof, and the exception is overruled.

A decree may be entered, overruling all of the exceptions and confirming the master's report.

*Albert D. Bean,* for complainant.
*Cooney & Cahill,* for respondent.