ELISHA H. DISLEY *vs.* MARGARET E. DISLEY.

MARCH 9, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Life Estates. Conveyances.*

Defendant entered into possession of premises under the following agreement: "We (lessor and lessee) agree that (lessee) is to continue to live in said house and make it a home for her sister, and without becoming a tenant, until further agreement between said parties":—

*Held,* that it was apparent that a tenancy of some kind was contemplated by the parties, and from the context it appeared that the words "without becoming a tenant" had particular reference to the payment of rent, and were not used in the strict technical sense given the word "tenant."

*Held,* further, that, the language of the agreement was appropriate to create a life estate, and the fact that technical words of grant were lacking was not material, in view of the modifications governing conveyancing now in force.

*Held,* further, that although the phraseology of the instrument was merely that of an agreement, the intent being clear to convey the possession and right of occupancy of the premises until the time when a mutual agreement to the contrary should be reached between the parties, all mere form being done away with by the statutes, it was sufficient to convey a life estate to lessee.

Distinguishing *Johnson* v. *Johnson,* 13 R. I. 467.

TRESPASS AND EJECTMENT.    Heard on exceptions of defendant, and sustained.

JOHNSON, J.    This is an action of trespass and ejectment brought by Elisha H. Disley, of Providence, against his daughter, Margaret E. Disley, for the possession of the house located at No. 15 Jastram street, in said Providence.

The declaration contains the ordinary first count incorporated in trespass and ejectment writs.    It also contains an additional count which alleges that the defendant entered said premises under an agreement in writing (set forth below in full) made with the plaintiff, and that, after a notice to quit on May 15, and another notice to quit on August 16, 1909 (given on August 12, 1909), she has refused to surrender possession of said premises.

The action was commenced on August 23, 1909, and resulted in a decision in favor of the defendant, in the District Court, on the ground that the said agreement in writing, between the parties, constituted the defendant a tenant for life. of said premises.

The case was thereupon taken by the plaintiff to the Superior Court, where it was tried on October 28th, 1909, before a justice of the Superior Court and a jury.    At the close of the plaintiff's evidence, the defendant's counsel announced that the defendant would submit no evidence, and said counsel thereupon moved that a verdict be directed by the court in favor of the defendant, on the evidence already submitted. The court denied said motion, to which ruling the defendant's counsel duly excepted.    Then the plaintiff's counsel moved that a verdict be directed in favor of the plaintiff.    And the court granted this motion, to which ruling the defendant's counsel also duly excepted.

The court's rulings were based on the theory that said agreement in writing, between said parties, constituted the defendant a tenant at will merely.

Later the defendant filed her bill of exceptions, based on said two exceptions, viz.: (1) To the refusal to direct a verdict

for the defendant, (2) to the directing of a verdict in favor of the plaintiff.

The case is now before this court on said bill of exceptions.

The aforesaid agreement in writing, mentioned in the additional count to the declaration, was as follows:

"PROVIDENCE, March 4, 1909.

"We the undersigned, Elisha H. Disley and Margaret E. Disley, do agree with each other as follows: The said Elisha H. Disley hereby agrees to return the furniture which he has taken away to the house where said Margaret E. Disley is living, at No. 15 Jastram street, in Providence, R. I., and the said Margaret E. Disley is to continue to live in said house and make it a home for her sister who now lives with her, and without becoming a tenant, until further agreement between said parties and said Elisha H. Disley is to pay to said Margaret E. Disley the sum of two dollars and fifty cents per week, until the sum of one hundred and eighty-eight and 76-100 dollars is paid in full, and that the said Margaret E. Disley is to discontinue a suit which she has brought against said Elisha H. Disley and make no further claim against Elisha H. Disley and said Elisha H. Disley is to have the right to board with said Margaret E. Disley, at any time he may desire to do so, at such price as may be agreed upon between them.

"(Signed)    ELISHA H. DISLEY,
"MARGARET E. DISLEY."

The defendant was, and still is, in possession of said premises under said writing. And the questions invoked in this case, and raised by said exceptions, may be said to be

(1) Had the plaintiff any right whatever to terminate the defendant's possession of said premises, and

(2) If so, did the plaintiff take proper steps to terminate such possession?

The defendant's counsel claim, first, that the defendant had, and has, a life tenancy in said premises, and argue that "under the terms of said writing the defendant 'is to continue to live in said house and make a home for her sister who now lives

with her, and without becoming a tenant, *until further agreement between said parties.*'

" In the first place we contend that the words 'without becoming a tenant' are clearly used in a broad and colloquial sense and have particular reference to the payment of rent, and that they are not used in the strict technical sense that they occur in the expressions 'tenant for life' or 'tenant for years,' etc. In other words, we contend that said words are the equivalent of the words, 'without paying rent.'

" In the next place we urge that the above quoted language which shows the duration of the defendant's occupancy, is language appropriate to the creation of a tenancy for life. Her occupancy is to endure 'until further agreement between said parties.' Such an *agreement* would constitute a future contingency, and render the duration of the occupancy so uncertain as to create a life estate. Where the tenancy may *possibly* last for the occupant's life, a life estate is created. A future 'agreement' implies mutuality, and the parties might not in the present case come to such an agreement during the defendant's lifetime."

Defendant's counsel also suggests that the instrument in the present case has the requisites of a lease and may be construed to be a life lease to the defendant. The plaintiff contends that the agreement created a tenancy at will. He argues that the plaintiff having a life estate could convey it only by deed; that, therefore, the agreement in question could not create an estate for life; that, as said agreement could not create an estate for life, and no rent was reserved and no term agreed upon, the agreement clearly created a tenancy at will. He cites *Johnson* v. *Johnson*, 13 R. I. 467. This case, together with the cases cited therein (with one exception), is clearly distinguishable from the case at bar. They all involve an occupation without any prescribed terms, or for a generally indefinite term — a situation which is held to create an estate terminable at the will of the grantor or owner of the premises *only.* In the present case, however, the occupation is, by the language of the agreement, to last until the happening of a definitely defined future event, viz., the making by the parties of an

agreement to the contrary. And, not only that, but the very nature of said future event makes the happening of the same depend, not alone upon the will of the grantor or owner, *but also on the will of the grantee or occupier.* If the occupier shall refuse to enter into an agreement with the owner, either to vacate or to change the manner of occupation, then no agreement will be made, within the meaning of the language of the writing in this case.

The exception, among the cases cited in *Johnson* v. *Johnson, supra,* which needs special consideration, is the case, *Richardson* v. *Langridge,* 4 Taunt. 128.

A perusal of the facts upon which said case is based will show that it was merely an ordinary case, like *Johnson* v. *Johnson,* above, involving an occupation without any prescribed terms and for a generally indefinite term. The difficulty comes from the ambiguity of the court's declaration in said case that, if an agreement be made to let premises *so long as both parties like,* reserving a compensation *de die in diem,* it creates a tenancy at will. An analysis of said case will show that the expression "so long as both parties like" is used in the sense "so long as both parties continue to hold or maintain their present liking, understanding or agreement," which is the same thing as saying that the letting is to continue until either of the parties elects otherwise. If the letting was to be terminated at the will of *either* the owner or the occupant, it would surely be a tenancy at will. Said case is very different from the present case, which fixes as the future event the making of an agreement between the parties. Such a future agreement, in order to be made, must depend on the will of *both* and not on the will of *either* of the parties. In fact, said case is quite the opposite of the present case, for, in that case, the occupation was to be terminated upon the happening of a *disagreement;* while, in the present case, the occupation is to be terminated on the making of an agreement.

But it may be asked,—what would be the situation if the owner should refuse to enter into an agreement to terminate the defendant's tenancy, though the defendant herself might desire to do so? Would the defendant be unable to terminate

her tenancy without such agreement on the part of the plaintiff? Apparently the case would not be different from the situation if the defendant held an estate as long as a certain tree shall stand. She could, in such case, at any time previous to the falling of such tree renounce the actual benefit, occupancy, and use of such estate, but would remain clothed with the title thereto, unless she conveyed the same away. The (1) termination of the occupancy in the present case is, by the terms of the writing, made to depend upon the will of the occupant, and hence the same is not to be deemed to be a tenancy at will (*i. e.*, at the will of the owner).

The agreement provides that "the said Margaret E. Disley is to continue to live in said house and make it a home for her sister who now lives with her and without becoming a tenant, until further agreement between said parties." We think the defendant's contention that the words "without becoming a tenant" are used in a broad and colloquial sense, and have particular reference to the payment of rent, and that they are not used in the strict technical sense given to the word "tenant" in the expressions "tenant for life," "tenant for years," etc., is justified by the context. It is evident from the language of the writing that tenancy of the premises, of some kind, was contemplated by the parties. Counsel for the parties differ only as to the kind of tenancy created by the writing, and contend: the plaintiff's counsel, that it is a tenancy at will; and defendant's counsel, that it is a tenancy for life.

Is the language of the agreement appropriate to the creation of a tenancy for life? "These estates may be made to depend upon a contingency, which can happen, and determine the estate before the death of the grantee. Thus, if an estate be given to a woman *dum sola*, or *durante viduitate*, or to a person so long as he shall dwell in a particular place, or for any other intermediate period, as a grant of an estate to a man until he shall have received a given sum out of the rents and profits; in all these cases, the grantee takes an estate for life, but one that is determinable upon the happening of the event on which the contingency depended." 4 Kent's Com. (12th ed.) *p. 26, Lect. LV.

"The expression 'life estates' is to be thought of as comprising a well-defined class of interests, some of which may not continue during any specified life or lives, but all of which are freehold estates not of inheritance. Any estate that *may* last for a life or lives, that is not inheritable, and that is not at will nor for any fixed period of time, is placed in this category. For example, an interest granted to a widow so long as she remains unmarried, or to a man while he continues to live in a certain house, or to A. until a designated tree falls, is a life estate. A woman, having land during her widowhood, may terminate her ownership, by marrying, the day after she acquires it; yet, for the twenty-four hours during which it is hers, she has a life estate, subject to all the principles, rights, and duties of life interests in realty. The indefinite duration of the estate and the fact that it may continue for life place it within that class.

"Life estates are classified, according to the manner in which they are created, into *a*, Conventional life estates, or those made by act, contract, or convention of the parties; and *b*, Legal life estates, or those made by operation of law. a. As appears from the preceding section, the first of these groups, the conventional life estates, are naturally subdivided into: (a) An estate to one for his own life, illustrated by an estate to A. *as long as he lives;* (b) An estate *per autre vie*, or to one person during the life of another, illustrated by an estate to X. *as long as Y. lives;* and (c) An estate for an uncertain period, which is not inheritable nor at will and may last for life, illustrated by an estate to X. *while a designated tree shall stand*, or to Y. *so long as he continues to live on the land.*" . . .

"It is to be reiterated and emphasized here that such interests as these are life estates. Indefinite duration that may be during a life, incapability of being inherited, and indeterminability merely at will usually place an ownership of realty within the category of life interests. Such are estates, to A. while he continues to live on the land, to a man and his wife during coverture, to a widow so long as she remains unmarried, to B. until he ceases to carry on a specified business, to X. while a designated tree stands, and to Y. during his residence abroad.

Though such an ownership may quickly terminate because of the happening of the specified event, it is a life estate, governed by all the rules and principles of life estates, as long as it continues." Reeves on Real Property (1909), vol. 1, §§ 439, 440, 444; pp. 625, 626, 633.

"It matters not how contingent or uncertain the duration of the estate may be, or how probable is its determination in a limited number of years, if it is capable of enduring for the term of a life, it is within the category of estates for life." 1 Washburn on Real Property, 6th ed., § 223.

The language of said agreement, limiting the duration of the defendant's occupancy, is (in the light of the foregoing illustrations) appropriate to the creation of a life estate in her. But it may be objected that, even if such language is appropriate to the creation of a life estate, yet that essential technical words of conveyance are lacking; that a life estate is a freehold and can only be conveyed by technical words of grant, and that in said writing no such words appear. This objection would, under the old-time strictness of the common law, perhaps be a good one; but it is not a valid objection in the light of the modifications, statutory and otherwise, which exist in the present law governing conveyancing. Thus, our statute (Gen. Laws of 1896, Chap. 202, § 19) has declared that the use of the word "grant" is not necessary in order to convey tenements and hereditaments corporeal or incorporeal, and section 11 of said chapter provides that "Any form of conveyance in writing, duly signed and delivered by the grantor, or the attorney of the grantor duly authorized, shall be operative to convey to the grantee all the possession, estate, title and interest, claim, demand or right of entry or action, of the grantor, absolutely in and to the land conveyed, unless otherwise expressly limited in estate, condition, use or trust, and, if otherwise expressly limited, shall convey such property for the time or estate or on the condition, use or trust as declared, without any other act or ceremony; and if also duly acknowledged and recorded, shall be operative as against third parties." And section 4 of said chapter provides that "any instrument purporting to convey lands, tenements or hereditaments may

be referred to as, and shall be, a deed though no seal be affixed thereto."

It appears to us that the instrument in question in this case conveys to the defendant the possession and right of occupancy of said premises, until the time when a mutual agreement to the contrary shall be reached between said parties. Such intent is clear, notwithstanding the phraseology of the instrument is merely that of an agreement. The statutes above referred to have done away with all mere form in this regard, and when the intention to convey an interest can be gathered from the face of the instrument, that is sufficient. An estate is conveyed to the defendant which is capable of enduring for a life, and is, therefore, a life estate.

The defendant's motion for the direction of a verdict should have been granted. The direction of a verdict for the plaintiff was error.

The defendant's exceptions are sustained, and the case is remitted to the Superior Court with direction to enter judgment for the defendant.

*Frank H. Wildes,* for plaintiff.
*Page & Cushing,* for defendant.