Helen L. **RENIERE**

v.

Barbara **GERLACH.**

Barbara **Gerlach**

v.

Donald **Reniere et al.**

No. 98–390–Appeal.

Supreme Court of Rhode Island.

June 8, 2000.

J. Ronald Fishbein, Providence, for Plaintiff.

Richard A. Pacia, Pawtucket, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The gravamen of this appeal turns on the interpretation of a single clause contained within a quitclaim deed from a gravely ill father to his daughter. On January 8, 1991, Vernon H. Fiske (Fiske) executed a quitclaim deed that conveyed his home at 11 Ausdale Road, Cranston, Rhode Island, to himself and to his daughter, Helen Reniere (Helen) as joint tenants. The deed, which was properly recorded at the Cranston city clerk's office the next day, included a clause providing that:

> "Subject to and reserving a life tenancy to BARBARA GERLACH conditioned upon the payment of real estate taxes and all expenses associated with her tenancy by the said BARBARA GERLACH and subject also to the condition that the said BARBARA GERLACH must maintain the property in good repair."

At the time of the conveyance, Barbara Gerlach (Gerlach), Fiske's long-time companion, had resided with Fiske in his Cranston home for many years. In early 1992, Gerlach moved out of the home, and in August of that same year, Helen moved in and resided with Fiske until his death on August 3, 1993. Helen has continued to occupy the home with her husband, Donald Reniere (Donald) (collectively the Renieres). Unfortunately, relations between Gerlach and the Renieres soured after the death of Fiske, and, in January 1994, Donald wrote to Gerlach and requested that Gerlach terminate her life tenancy in order to release her from the tax liability that accompanied the life estate. According to Donald, because of Gerlach's life tenancy, the property taxes were her responsibility. Upon receipt of this letter, however, Gerlach, rather than forfeit her life tenancy, responded to Donald's request with a certified letter from her attorney requesting that the Renieres vacate the premises so that Gerlach could take possession.

On August 17, 1994, Helen filed suit in Providence County Superior Court seeking to clear title to the property on the grounds that Gerlach had failed to satisfy the conditions of her alleged interest, specifically, that she had failed to pay real estate taxes and other expenses, and had failed to maintain the property in good

repair. In a separate action filed on July 28, 1995, Gerlach asserted that the Renieres wrongfully were in possession of the property, and sought an order requiring them to quit and vacate the property.[1] Thereafter, Gerlach motioned for summary judgment, and on March 24, 1998, the Renieres cross-motioned for summary judgment. A hearing was held before a justice of the Superior Court, and two separate, identical judgments were issued by the motion justice; both judgments granted summary judgment in favor of Gerlach and contemporaneously denied the Renieres' motion. On July 28, 1998, the Renieres filed this timely appeal.

## STANDARD OF REVIEW

It is well settled that "[s]ummary judgment is an extreme remedy and should be applied cautiously." *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996) (citing *Hydro–Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 954 (R.I.1994)). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Super. R. Civ. P. 56(c). "Thus, the only task of a trial justice in passing on a motion for summary judgment is to determine whether there is a genuine issue concerning any material fact." *Industrial National Bank of Rhode Island v. Peloso*, 121 R.I. 305, 307, 397 A.2d 1312, 1313 (1979) (citing *Rhode Island Hospital Trust National Bank v. Boiteau*, 119 R.I. 64, 376 A.2d 323 (R.I. 1977)). However, the trial justice is constrained to perform this function without passing upon the weight or credibility of the evidence. *Industrial National Bank*, 121 R.I. at 308, 397 A.2d at 1313 (citing

*Palazzo v. Big G Supermarkets, Inc.*, 110 R.I. 242, 292 A.2d 235 (1972)).

## DISCUSSION

The Renieres argued on appeal that the trial justice erred in granting summary judgment in favor of Gerlach, and maintained that the conveyance failed to create a life estate in favor of Gerlach because the granting clause as drafted is repugnant to the law of this state. Further, the Renieres contend that if a life estate was created, it since has been terminated because of the permissive waste Gerlach has suffered upon the property.

In support of their contentions, the Renieres have delved into the strict rules of construction that for so long governed conveyances in feudal property law. However, the issues before this Court do not beckon us to traverse the complex and tortuous origins of real property law. Rather, the issue before this Court is one of interpretation; our task is to determine whether the language in the deed conveyed a life estate to Gerlach, and, if so, whether she has forfeited her right by her actions subsequent to Fiske's death. Additional facts will be supplied insofar as they are necessary to address the issues raised in this appeal.

### I

### Creation of a Life Estate

The Renieres first argued that the language of the deed forecloses any possibility that Gerlach has a life estate in the property. Specifically, they maintained that because Fiske first conveyed the estate in fee to his daughter and thereupon attempted to cut down his and Helen's fee simple interest in the property by a subsequent reservation of a life estate, the conveyance is void. We disagree.

---

1. The two actions were consolidated on May 22, 1996. Donald Reniere, although not a party to the first action (PC 94–4466), is a defendant in the second action filed by Gerlach (PD 96–2018), and is therefore a party to this consolidated appeal.

■ In support of their argument, the Renieres rely upon the rule of construction set forth in *Rhode Island Hospital Trust Co. v. City of Woonsocket*, 48 R.I. 345, 137 A. 411 (1927), which states that when a testator has made an "absolute estate in fee in land * * * a subsequent provision inconsistent with the absolute nature of that gift shall be regarded as a repugnant provision and treated as void in law." *Id.* at 347, 137 A. at 412. We are of the opinion that this repugnancy principle has no application to the facts of this case. In *Chile v. Beck*, 452 A.2d 626 (R.I.1982), we acknowledged the repugnancy principle referred to in *City of Woonsocket*, but stated that, "this rule, *like any other [rule of] construction*, must be subordinated, as here, to the testatrix's intent and must yield to that intent." 452 A.2d at 627. (Emphasis added.) We are bound to give the language in the deed such an interpretation as will carry out the grantor's intent. *See id.* at 628.

We are satisfied, as the Renieres conceded, that in executing the instant quitclaim deed, it was Fiske's intent to create a life estate for Gerlach. It is clear from an examination of the record that not only was it Fiske's desire to create a joint tenancy with rights of survivorship with his daughter, but that Fiske also intended to provide for Gerlach by giving her shelter and comfort throughout her life, as long as she maintained the property and paid the real estate taxes and other expenses. Fiske and Gerlach were long-time companions, and had resided together at 11 Ausdale Road for many years. Also, we note that it was Donald who complied with Fiske's requests by arranging for the deed to be drawn in accordance with Fiske's instructions, and that it was duly executed and recorded, yet it is the Renieres who are seeking to have the life estate nullified by alleging that the deed was improperly drafted. The clause in the deed read, "[s]ubject to and reserving a life tenancy to BARBARA GERLACH," and we are satisfied that this language, on its face and in light of the facts of this case, manifests an intent on the part of Fiske to create a life estate for Gerlach.

Further, as early as 1910, this Court rejected the notion that technical words of conveyance are required to effectively convey an estate. We stated in *Disley v. Disley*, 30 R.I. 366, 75 A. 481 (1910), that where there is a challenge to the creation of a life estate for lack of technical words of grant, that challenge would "under the old-time strictness of the common law, perhaps be a good one," but no longer would be valid in light of "the present law governing conveyancing." *Id.* at 373, 75 A. at 484. The position advanced by plaintiffs would in effect have this Court return to the strict harshness of the common law governing conveyances and to ignore the intent of the grantor. We decline this invitation.

## II

### Permissive Waste

■ In addition, the Renieres argued that if Gerlach were declared vested with a life estate in the property, she has forfeited it by suffering permissive waste upon the property. In light of the facts of this case, we deem this contention to be without merit. Specifically, the Renieres contended that by her failure to pay real estate taxes, by failing to make necessary and reasonable repairs, and by abandoning the property, Gerlach has suffered permissive waste on the property, and therefore Helen, who holds the remainder interest, should be vested with exclusive right to the property. General Laws 1956 § 34–14–1 provides:

"**Liability of tenant for life or years to reversioner or remainderman.**—Every person seised of any real estate for the term of his or her own life, or for the life or lives of any other person or persons, or as a tenant for years, who commits or suffers any waste on such estate, shall forfeit his or her estate in the place so wasted and double the amount of the waste so done or suffered, to be recov-

ered in an action of waste by the person entitled to the next estate in remainder or reversion in the place so wasted."

In *Chapman v. Cooney*, 25 R.I. 657, 57 A. 928 (1904), this Court defined waste as "the doing of those acts which cause lasting damage to the freehold or inheritance, or the neglect or omission to do those acts which are required to prevent lasting damage to the freehold or inheritance." *Id.* at 660, 57 A. at 929. This Court went on to state that "the question as to whether [waste] has been committed in a given case is to be determined in view of the particular facts and circumstances appearing in that case." *Id.* Although almost a century has passed since the concept of waste was laid out in *Chapman,* we adhere to it today and conclude that the facts and circumstances of the case before us do not rise to the level of waste.

There is no evidence that the property at 11 Ausdale Road has suffered lasting damage by Gerlach's inattention. First, the assertion that Gerlach's failure to pay taxes constitutes waste is without merit. Indeed, the taxes have been paid, but by the Renieres and not by Gerlach. We will not deem as waste Gerlach's failure to pay taxes where the failure to do so is predicated on the payment by another party, who gets to the tax collector first and then denies possession to the life tenant who has demanded same. Also, the record reveals that since Fiske's death, the Renieres have made repairs to the property during their occupancy. Therefore, by their own actions they have prevented the property from suffering any lasting damage. In addition, the argument that Gerlach abandoned the property is also without merit. Her attorney requested the Renieres to vacate and they refused to do so. Also, there has been no showing that the property has sustained any substantial or lasting damage. Finally, we are constrained to point out that the Renieres contention that Gerlach committed waste on the property cannot be reconciled with the fact that the Renieres have remained in possession of the property since Fiske's death and have enjoyed the benefits and comfort of 11 Ausdale Road while denying same to Gerlach.

## CONCLUSION

We are satisfied that a life estate in the property was properly created, and that Gerlach did nothing to strip herself of this interest. For the foregoing reasons, the Renieres' appeal is denied, and the judgments appealed from are affirmed. The papers in the case are remanded to the Superior Court.