DECISION
This dispute focuses on the ownership of a picturesque and unique waterway in the Village of Shannock. The matter came on before the Court for a jury-waived trial in February, March and April of 2005. Plaintiff Horseshoe Falls Preservation, Inc. ("Horseshoe Falls") requests that a cloud on title be removed from certain property located in Richmond, Rhode Island. Horseshoe Falls also claims that the Defendants Francis X. Flynn and FXF Hydro, Inc. ("Defendants") slandered its title and requests damages. Defendants deny liability and counter-claim for a determination that Francis X. Flynn ("Flynn") owns title to the property. Defendants also counter-claim for slander of title.
This dispute concerns ownership to property which was formerly a part of the Columbia Narrow Fabric Company mill site which is located in the Village of Shannock. The Pawcatuck River is a natural boundary for the Towns of Richmond and Hopkinton. Main Street crosses through the Village of Shannock and over a bridge adjacent to the mill site. The mill had properties in both towns, on both sides of the river. The mill site is adjacent to an odd and unique horseshoe-shaped water fall, a dam, water control gates, and brick factory buildings in a beautifully set small New England village. The village has been placed on the National Register of Historic Places. The structures redirecting the water flow in the waterways were manmade, but there have been no significant changes to this design for about one century.
Each of the parties received deeds for separate parcels in the mill area. In this action, they dispute the extent of their interests, particularly who has rights over certain sections of the waterways.
 Findings of Fact
In the 1770s, the Clarke family purchased what is now the Horseshoe Dam in the Village of Shannock. The family operated a gristmill for more than one hundred years on what was described in testimony as the "carpenter shop." In 1848, the Clarkes built a water-powered textile mill below the dam and then operated two mills on each side of the river simultaneously, both powered by water spilling over the Horseshoe Dam. After the gristmill closed, the Clarkes continued to operate the textile mill under the name of the Columbia Narrow Fabric Company. In 1939, the property and its buildings were mapped out and the resulting plan of the property was recorded. It is entitled "Plan of land in Richmond Charlestown, R.I., belonging to George P. and Henry G. Clarke By Waterman Engineering Co., Aug., 1939, Sheet No. 1 of 2 Sheets."[1]
In 1972, the Clarkes sold most of their holdings in Shannock (adjacent to the mills) to the J. Regan Steel Erection Co. ("Regan") but preserved their interest in the sites of the two mills and all of the water rights. Although the 1972 deed (recorded in Richmond Land Evidence Book 31 at Page 172) kept most of the water rights intact with the ownership of the mill property, it separated the property into three separate parcels within the deed description.[2]
In 1974, the Clarkes deeded the reserved property water rights to Regan. This conveyance included rights in the Fore Bay and the waterway which leads from the southwestern corner of the Fore Bay through the mill back to the river (the Tail Race).[3] It also included the Head Race (to the east of the Fore Bay and east of Main Street).
The two parcels were received by the same entity and continued to be owned by the same (successive) owners. For convenience, the two parcels will now be referred to as "the mill property."
In 1981, the then owner conveyed a portion of the mill property to Sanford Neuschatz and Monica Schaffer. Although this conveyance included the parcel to the north of the Head Race, it did not include any water rights. It references the "carpenter shop" so-called, which lies on a parcel east of Main Street, south of the Head Race and north of the main Pawcatuck River. Significantly, the deed severs ownership of the land under the shop from the shop itself. The conveyance for the carpenter shop included only the building itself, and excluded the land beneath it. Other deeds also excluded all water rights.
In January 1983, Martin Industries, Inc. conveyed a portion of the mill property to Shannock Associates. (Exhibit 9.) This conveyance (recorded in Richmond Deed Book 45 at Page 434) included the land beneath the carpenter shop, the Fore Bay, the rights in the Pawcatuck River, the Head Race, the pond above the dam and flowage rights. This deed indicates it is subject to restrictions as referenced in the deed in Book 33 at Page 447. As the deed in Book 33 does not use the word "restriction," the 1983 deed is inartfully drafted. Subsequent deeds for the mill property fail to include any water rights.
In 1993, the title to the remaining mill property was in the name of New England Preservation Associates, a partnership. However, this Court had placed the partnership in receivership (case number W.M. No. 93-339). After having united the property, and receiving court authority to distribute it, the Receiver distributed the property, not by the old deed descriptions, but by reference to the Town Tax Assessor's plats and lots. In these deeds, the Receiver did not reference the older deeds or the property descriptions in the previous conveyances.
On October 26, 1993, the Receiver conveyed Richmond Tax Assessor's Plat 10D, Lot 26 to Francis X Flynn. This included remaining mill property to the south and west of Main Street (now known as Shannock Village Road), but no property to the east or north of the road. It also includes rights in the Fore Bay and the Pawcatuck River, but these rights were previously deeded to Shannock Associates in 1983. In 1994, Mr. Flynn conveyed this lot to FXF Hydro, Inc.
On October 26, 1993, the Receiver also conveyed Richmond Tax Assessor's Plat 10D, Lot 28 to Michael Russo and Catherine Cressy. From the assessor's map, this clearly includes the land beneath the carpenter shop, to the east of Shannock Village Road, but the precise bounds of this lot on the assessor's map are not clear.
Each time the property was platted or conveyed (1939, 1972, 1974, 1981, 1983 and 1993) the property was divided differently.
This action was commenced in 1994 by Horseshoe Falls Preservation, Inc. The complaint asks the Court to remove the cloud on title for the land beneath the carpenter shop and claim a slander of title.
Defendants counterclaim seeking removal of any cloud in their title in the dam and asserting a claim of slander of title.
 Analysis and Conclusions of Law
The parties seek judgments removing clouds on title for the disputed parcels. The parties appear to dispute water rights, the carpenter shop and the land beneath it. As described above, the land beneath the carpenter shop is an odd parcel. It lies north and east of Old Shannock Road (Main Street) and encompasses a bluff surrounded on the north by the Head Race and the east and south by the Pawcatuck River. The parties recognize the picturesque beauty of the site and its important water rights.
Standards of Deed Construction
The Rhode Island Supreme Court has consistently construed deeds by attempting to construe the grantors' intent. A decision issued 70 years ago explains the reasoning to be applied. The fundamental rule to be applied is well stated in Gaddes v.Pawtucket Institution for Savings, 33 R.I. 177, 186, (1911),80 A. 415, 418, Ann.Cas. 1913B, 407, as follows, and authorities are cited supporting the rule:
 "In construing a deed the object sought is to ascertain and give effect to the intention of the parties. The court, however, seeks only to translate the instrument before it, not to create a new and different one. Accordingly the intention sought is only that expressed in the deed, and not some secret, unexpressed intention, even though the latter be that actually in mind at the time of execution. This is the fundamental rule of all judicial interpretation." (Citations omitted.)
At page 187 of 33 R.I. 177, 80 A. 415, 419, Ann.Cas. 1913B, 407, of the same opinion is stated the following additional rule which applies under certain circumstances and which is relied upon by counsel for the complainant in the instant case:
 "It is a well-recognized rule that after having once granted an estate in a deed the grantor cannot restrict or nullify it by a subsequent clause." (Citations omitted.)
 "The primary rule today for the construction of a deed is excellently stated in 8 R.C.L. 1037, `Deeds,' § 93: `The primary rule to be observed, therefore, is that the real intention of the parties is to be sought and carried out whenever possible. . . . So, whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and must not be applied so as to defeat the intention. In modern times the more sensible rule obtains, in all cases to ascertain and give effect to the intention of the parties as gathered from the entire instrument, together with the surrounding circumstances, unless such intention is in conflict with some unbending canon of construction or settled rule of property, or is repugnant to the terms of the grant. Furthermore, the primary or dominant intent must prevail over a secondary intent, where the two are inconsistent, wherefore if two clauses are inconsistent they must be construed so as to give effect to the intention of the parties as collected from the whole instrument.'" Sullivan v. Rhode Island Hospital Trust Co., 56 R.I. 253, 259, 185 A. 148, 150-1 (R.I. 1936).
These principals continue to be applied in modern cases:
 Whenever possible, the terms of a deed are construed according to their plain meaning. Sakonnet Point Marina Ass'n, Inc. v. Bluff Head Corp., 798 A.2d 439, 442 (R.I. 2002), citing Kusiak v. Ucci, 53 R.I. 36, 38, 163 A. 226, 226 (1932).
 When construing a deed, the Court is bound to give the language in the deed such an interpretation as will carry out the grantor's intent. Reniere v. Gerlach, 752 A.2d 480, 483 (R.I. 2000). The grantor's intent must be ascertained from the deed itself, Gaddes v. Pawtucket Institution for Savings, 33 R.I. 177, 186, 80 A. 415 (1911), and the deed must be construed according to its plain meaning. Kusiak v. Ucci, 53 R.I. 36, 38 (1932). Ciba Specialty Chemicals Corp. v. WP Properties, L.L.C., 2001 WL 1005855 (R.I. Superior, 2001)
The Carpenter Shop Building.
The building itself was conveyed by the 1981 to Sanford Neuschatz and Monica Schaffer. This conveyance did not include the land under the building and specifically excluded any water rights. Although this conveyance included the parcel to the north of the Head Race, it did not include any water rights. The conveyance specifically excludes the land beneath it. The parties do not dispute who owns the carpenter shop building now, and do not even debate the issue here.
The interests of Mr. Neuschatz and Ms. Schaffer in the 1981 grant have been conveyed through other owners. However, it is important to note that the ownership of the lot under the building has been separated from the ownership of the land under the building for decades.
The Land Beneath the Carpenter Shop
The 1983 conveyance of Martin Industries to Shannock Associates references this parcel ("the land under the carpenter shop") as a part of the conveyance. It also conveys broad rights in the various waterways. As indicated, the deed was not a masterpiece of precision because it states:
 PARCELS ONE, TWO and THREE are subject to restriction as contained in deed from George P. Clarke et al recorded in the Land Evidence Records of the Town of Richmond in Book 33 at page 447.
The deed in Book 33 contains no "Restriction" per se. It contains exceptions and a power line easement, but no restrictions. Recently, our high court discouraged limitations on title, when none clearly exist:
 We construe the terms of any restrictive covenant "in favor of the free alienability of land while still respecting the purposes for which the restriction was established." Gregory v. State Department of Mental Health, Retardation and Hospitals, 495 A.2d 997, 1000 (R.I. 1985). Moreover, in those instances when the limitation in issue is unambiguous, restrictive covenants are to be strictly construed. "[w]e will not * * * seek ambiguity where none exists but rather we will effectuate the purposes for which the restriction was established." Ridgewood Homeowners Association v. Mignacca, 813 A.2d 965, 972 (R.I., 2003) (quoting Hanley v. Misischi, 111 R.I. at 238, 302 A.2d at 82 (1973)); Martellini v. Little Angels Day Care, Inc., 847 A.2d 838, 843 (R.I. 2004), (citations omitted).
In construing restrictions, courts attempt to allow free alienability of real estate while restricting the purpose for which the restriction was intended. Mignacca, 813 A.2d at 971, citing Gregory 495 A.2d at 1000. While a restriction is referenced by the 1983 deed, it is not clear that any restriction was intended. Hence, the Court finds that no restriction is created by the conveyance. The water rights that are conveyed in the deed are conveyed without restriction.
Regardless of the extent of any restriction, it is patently clear that the 1983 deed conveyed title to the land beneath the carpenter shop. This property stayed intact until the Receiver deeded the parcels out via separate deeds in 1993. The Receiver conveyed by reference to tax assessor's lots only. As a result of these deeds and subsequent conveyances, it is unquestioned that Assessor's Lot 26 (the original mill property, south and west of Shannock Village Road) is now owned by FXF Hydro, Inc., while Lot 28 (the land beneath the carpenter shop) is now owned by Horseshoe Falls Preservation, Inc.[4]
Water Rights
At trial, the parties also questioned their respective water rights. Though not specifically questioned in the complaint or counterclaim, the dispute at trial focused in large part on the extent of the water rights of the parties, particularly the Fore Bay.[5] Surprisingly, the parties did not focus on what the Receiver was conveying when he divided the property by assessor's lots. They did not present any evidence of the Receiver's intent in 1993, or of the precise description for the assessor's parcel. No assessor's cards or descriptions were introduced, excepting the maps of the entire plats. (Exhibits 19 and 20.) Nevertheless, the maps which describe the assessor's lots were minimally referenced by the title attorneys.
The illusory restriction from the 1983 deed from Martin Industries to Shannock Associates is described above. Far more concrete and enforceable are the explicit grants of water rights in that deed. After conveying the mill property the deed includes:
 "Together with all appurtenant rights including all rights in and to the waters of Fore Bay and all rights of flowage appurtenant to said parcel as referred to in said deed."
After conveying the "land under the carpenter shop," the 1983 deed adds:
 "Together with all the rights in and to the waters of the Pawcatuck River, the Pond above the dam and the Head Race and adjoining said parcel including the right of access and rights concerning the Head Race, the dam and flowage, as reserved in said deed in Book 31 at page 172."
Clearly, all water rights are being conveyed and are intended to be conveyed. This includes all rights in the Head Race, the Fore Bay and the dam, with all rights of flowage. The plain language of the deed itself conveys the water rights to Shannock Associates. Sakonnet Point Marina Ass'n, Inc. v. Bluff HeadCorp., 798 A.2d 439, 442 (R.I. 2002).
Plaintiff's title attorneys proffered in their testimony[6] their justification of Horseshoe Falls' alleged ownership in the Head Race and other waters. One attorney claimed that the westerly side of the Main Street bridge is the boundary line of ownership of the waters. He alluded to no conveyance referencing this line, but instead asserted that the flowage rights were an integral part of Lot 28 before 1974, in the 1974 conveyance and in the 1981 conveyance. His claim that the mill lot (Assessor's Lot 26) is entitled only to "a historical flowage which is capable of being determined by an engineer" was never explained as all water rights were conveyed by the language of the deed. Nevertheless, Plaintiff presented no legal authority to justify why the conveyance would include something other than what was explicitly included in the Receiver's deeds.
Defendants' expert, Attorney Solovetizik logically adduced how the mill owners sought to reserve all flowage rights, as the significant complex was water-powered. Lot 28 is not "overburdened" simply by having water flow around it. The attorney-witness further testified that there was no certainty that water rights are not reserved to Lot 28, but there is certainty (from the deed language) that water rights are reserved to Lot 26 and to benefit Lot 26.[7] These rights are not just reserved from one or two lots, but from the adjacent parcels designated as B, C, and E on the 1939 plat map. All these lots border the same waterways. The Court found Attorney Solvetizik's testimony well-reasoned and credible. He was quick to qualify his opinions, limit the scope of his testimony and even qualify his conclusions when he was not certain or could not provide a basis.[8]
Plaintiff's rebuttal witness, another title attorney, acknowledged the rights conveyed with Lot 28 were not as exact or definite as that conveyed with Lot 26. In the 1970s, what is now Assessor's Lot 26 received broad, appurtenant rights which were precisely stated to make them clear. The attorney reluctantly admitted his uncertainty concerning whether water rights were conveyed since then, and commented on the current descriptions "From a title view, I'm not at all happy with it, but it is not unusual in deeds from receivers."
The parties apparently contend that the reference to restrictions in the 1983 deed is an ambiguity which can be interpreted in a variety of ways. Through the testimony of title attorneys they argue that the Court should consider the extent of the water rights as they existed in 1974. Attorneys focused on whether the water rights were appurtenant to the mill in the conveyances of 1974 and 1981, though the Receiver was using different descriptions in 1993 and not referencing the earlier conveyances, the earlier lot descriptions or the 1939 plat map.
Our high court has confirmed that weight should be given to the assessor's map:
 "It has been determined by this court that when a deed is silent regarding littoral rights, the boundary lines presented on the plat plan referenced in said deed determine the owner's rights to the shore-line property. Boundaries are deemed to be fixed by the plat plan whether they lie at the high-water mark or beyond." Hall v. Nascimento, 594 A.2d 874, 876 (R.I. 1991) (citing Dawson v. Broome, 24 R.I. 359, 372, 53 A. 151, 157-58 (1902)); Taber v. Hall, 23 R.I. 613, 624-26, 51 A. 432, 436-37
(1902); Brown v. Goddard, 13 R.I. 76, 81-82 (1880).
Here, the only descriptions referenced in the Receiver's deeds are the tax assessor's plats and lots. The assessor's description is paramount.
The intention of the grantors has been to unite all water rights with the ownership of the mill itself, now Assessor's Plat 10D, Lot 26. The owners of Lot 26, Mr. Flynn and FXF Hydro, Inc. continue to have all water rights and flowage in Head Race, Fore Bay and the Tail Race. They hold flowage rights and other rights to the pond above the dam. While littoral rights in waterways can be challenging to delineate,[9] it is sufficient, for purposes of this action, to find that the water and flowage rights of Lot 26 are superior to that of Lot 28.
Slander of Title
Both parties included counts for slander of title. To establish a slander of title action a plaintiff must show:
 "that the [plaintiff] maliciously uttered false statements about [their] ownership of real estate which resulted in [their] sustaining an actual pecuniary loss. Malice in the context of a slander-of-title claim is `an intent to deceive or injure.' It is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant(s)." Montecalvo v. Mandarelli, 682 A.2d 918, 923 (R.I. 1996). (Citations omitted.)
As Horseshoe Falls failed to demonstrate that Mr. Flynn or FXF Hydro, Inc. claimed ownership of property which it owns (demeaning the title of Horseshoe Falls), it failed to meet its burden of proof.
In the same, Mr. Flynn and FXF Hydro, Inc. put forth sufficient evidence to establish that Horseshoe Falls falsely laid claim to their property, but they have failed to establish any damages or establish that Horseshoe Falls had malice or knowledge of the falsity. See Arnold Road Realty Associates, LLC v. Tiogue FireDistrict, 873 A.2d 119, 125 (R.I., 2005). Accordingly, all claims for slander of title fail.
 Conclusion
A judgment shall issue confirming that Mr. Flynn and FXF Hydro, Inc., or their appropriate successors in title,[10] are the owners of Lot 26 on Richmond Assessor's Plat 10D, as well as the all water rights and flowage in the Head Race, Fore Bay, Tail Race, flowage rights and other rights to the pond above the dam. The water and flowage rights of Richmond Assessor's, Lot 26 are superior to that of Lot 28.
To this extent, judgment is awarded to the Defendants on the first count of the Complaint, and the first count of the Counterclaim.
A declaratory judgment shall issue establishing that Horseshoe Falls Preservation, Inc., or its appropriate successor in title, is the owner of Lot 28 on Richmond Assessors Plat 10D. This does not include any water rights.[11]
Judgment is awarded to the defendants-counterclaimants on Count 2 of the Complaint, and judgment is awarded to Plaintiff on Count 2 of the Counterclaim; namely, the slander of title actions. No damages are awarded. Defendants are awarded costs. Counsel for the Defendants shall prepare a judgment, and documents sufficient to record the judgment in the Registry of Deeds.
[1] In referring to parcels or bodies of water herein, descriptions as shown on this 1939 plan are used. This plan is referenced in many of the subsequent conveyances.
[2] The rights in the Fore Bay, the dam and the flowage rights from the pond upstream are specifically reserved in the 1972 deed concerning the Richmond land, recorded in Richmond Land Evidence Book 31 at Page 172. The rights in the dam and the flowage rights are specifically reserved in the 1972 deed for the Charlestown property recorded in Charlestown Land Evidence Book 46 at Page 272.
[3] The 1974 deed (Exhibit 4) Richmond Land Evidence Record Book 33 at Page 447, conveys "Together with a all appurtenant rights including all rights in and to the waters of the Fore Bay and all rights of flowage appurtenant to said parcel . . ." and "Together with all rights in and to the waters of the Pawcatuck River, the Pond above the dam and the Head Race adjoining said parcel including the right of access and rights concerning the Head Race, the dam and flowage. . . ."
[4] The plaintiff, Horseshoe Falls Preservation, Inc., is the owner of the Russo/Cressy parcel, Lot 28 as the result of a number of deeds. While some of the more recent deeds attempt to incorporate a larger description, the plaintiff could only receive what the grantors owned, ie. Assessor's Lot 28.
[5] Though not pled sufficiently, the Court will address the issue by consent. While this procedure is not always appropriate, clearly all parties intended that this litigation would resolve the controversy over water rights. In Burke-Tarr Company v.Ferland Corporation, C.A. 88-296, (J.Darigan, September 11, 1995) a respected jurist of this Court followed this procedure because of the obvious need to resolve the pending issue, the willingness of the parties to litigate it and the need for efficiency.
[6] Throughout the trial, this Court expressed its concern regarding the opinion evidence of the title attorneys. While counsel did not object to each the opinions flowing liberally, the Court noted that the subject may not be one which is appropriate for an expert. The Court never found it to be beyond the understanding of laypersons. Moreover, "courts do not allow opinion evidence on a question of law unless the issue relates to a matter of foreign law." James v. Hawthorne, 635 A.2d 1167,1171 (R.I., 1994), citing McCormick, Evidence section 12 at 31 (3d ed., Clearly, 1984).
[7] Certainty is instrumental in real estate conveyancing.
[8] Attorney Solovetizik indicated that an important concept in the practice of real estate transfer is that a conveyance of a property with appurtenant rights is transferred with its appurtenant rights unless there is a contrary intention indicated. No such contrary intentions were found here.
[9] Note the difference of littoral rights which normally front on streams and rivers with riparian rights which front on navigable waterways, as described in Bristol v. Bristol and W.Waterworks, 23 R.I. 274, 49 A.974, 975 (1901).
[10] Mr. Flynn and FXF Hydro, Inc. are closely connected, and have conveyed deeds to one another without significant consideration. As there is no dispute between them concerning ownership, the Court will not reach the issue here, presuming that the parties are in agreement.
[11] The court does not intend to limit any rights to lateral or subjacent support which Horseshoe Falls Preservation, Inc. may have.